INHABITANTS OF ORONO, Appellants,

*vs.*

BANGOR RAILWAY AND ELECTRIC COMPANY.

Penobscot.    Opinion June 1, 1909.

*Statutory Construction. Municipal Bridges. Street Railroads Passing over Same. Repairs on such Bridges. Apportionment of Expense of such Repairs. Railroad Commissioners to Determine such Apportionment. Decision of Same Must Stand Unless Illegal or Unjust. Private and Special Laws, 1826, chapter 390 ; 1854, chapter 281 ; 1865, chapter 528 ; 1887, chapter 51. Revised Statutes, chapter 51, section 75.*

The real meaning of a statute is to be ascertained and declared even though it seems to be in conflict with the words of the statute.

The literal import of language used in statutes is often seemingly at variance with what was obviously intended. In such case the intention and not the literal import is to govern.

That which is within the intention of a statute, is within the statute, as if it were within the letter of it.

Revised Statutes, chapter 51, section 75, provides as follows : "Sec. 75. Bridges erected by any municipality, over which any street railroad passes,

shall be constructed and maintained in such manner and condition as to safety, as the board of railroad commissioners may determine. Said board may require the officers of the railroad company and of the municipality to attend a hearing in the matter, after such notice of the hearing to all parties in interest as said board may deem proper. Said commissioners shall determine at such hearing the repairs, renewals or strengthening of parts, or if necessary, the manner of rebuilding such bridge, required to make the same safe for the uses to which it is put. They shall determine who shall bear the expenses of such repairs, renewals, strengthening or rebuilding, or they may apportion such expense between the railroad company and the city or town, as the case may be, in such manner as shall be deemed by the board just and fair, and shall make their report as hereinafter provided.".

*Held:* That this statute is not necessarily limited to bridges actually " erected " by the municipality, but includes all highway bridges which municipalities are bound to maintain and keep in repair, and over which any street railroad passes.

The legislature having left to the board of railroad commissioners the whole question of how bridges over which street railroads pass shall be constructed and maintained, as to safety, and given them authority to apportion the expense between the railroad and the town, "in such manner as shall be deemed ·by the board just and fair," their decision of apportionment must stand unless manifestly illegal or unjust.

Where the railroad commissioners examined a bridge over which a street railroad passes, determined what repairs were necessary, approved plans and specifications for those repairs, required the work to be done to their satisfaction, gave hearings to all parties in interest, and made their decision that the town should pay a little less than one-half part of the amount the railroad claimed to have paid for the repairs under a written contract, *held*, that the decision of the railroad commissioners was not manifestly illegal or unjust.

Where it was provided in the charter of a street railroad company that " said corporation shall keep and maintain in repair such portions of the streets, town or county roads, as shall be occupied by the tracks of its railroad, and shall make all other repairs of said street or roads which shall be rendered necessary by the occupation of the same by such railroad," *held*, that the street railroad company was not necessarily required by this provision in its charter to maintain and keep in repair the entire structure of a bridge over which its railroad passes, but to what extent certain repairs made on the bridge were rendered necessary by the occupation of it by the railroad company was a question for the determination of the railroad commissioners.

Where a bridge over which a street railroad passes, was for sixty years a toll bridge and formed a part of a highway in a town, and more than twenty years ago the town, by voluntary municipal action, took over the bridge, making it free forever after, and thereby assumed the duty to keep and

maintain it as a part of its highway, and has performed that duty ever since, *held*, that the bridge comes within the purview of Revised Statutes, chapter 51, section 75, irrespective of the fact that it was not originally erected by the town or that the town may not have acquired a good and sufficient title thereto when it purchased the bridge.

On report.    Decision of Railroad Commissioners sustained and affirmed.

Appeal by the inhabitants of the town of Orono, Penobscot County, from a decision of the Railroad Commissioners apportioning to that town a part of the expense of certain repairs upon the bridge therein across the Stillwater branch of the Penobscot river, over which bridge the street railroad of the defendant passes, and which said appeal was duly entered in the Supreme Judicial Court in said county.    The matter was heard in said court and at the conclusion of the evidence and by agreement of the parties the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Charles J. Dunn, and Louis C. Stearns*, for plaintiffs.

*E. C. Ryder*, for defendant.

Sitting:    Emery, C. J., Whitehouse, Spear, Cornish, King, Bird, JJ.

King, J.    On report.    An appeal by the inhabitants of the town of Orono from a decision of the Board of Railroad Commissioners apportioning to that town a part of the expense of certain repairs upon the bridge therein across the Stillwater branch of the Penobscot river, over which bridge the street railroad of the defendant passes.

The statute under which the decision was made (chap. 51, sect. 75, R. S.) is as follows: "Bridges erected by any municipality, over which any street railroad passes, shall be constructed and maintained in such manner and condition, as to safety, as the board of railroad commissioners may determine.    Said board may require the officers of the railroad company and of the municipality to attend a hearing in the matter, after such notice of the hearing to all parties in interest as said board may deem proper.    Said

commissioners shall determine at such hearing the repairs, renewals or strengthening of parts, or if necessary, the manner of rebuilding such bridge, required to make the same safe for the uses to which it is put. They shall determine who shall bear the expenses of such repairs, renewals strengthening or rebuilding, or they may apportion such expense between the railroad company and the city or town, as the case may be, in such manner as shall be deemed by the board just and fair, and shall make their report as hereinafter provided."

March 4, 1908 the Board of Railroad Commissioners, upon petition of the defendant, and after notices to all parties in interest and hearings, made their decision (so far as material here) "that the Bangor Railway and Electric Company shall repair the bridge under the direction of the Railroad Commissioners, so as to make it safe for the passage of cars and teams and carriages over it. We estimate the cost of repairing the bridge to the satisfaction of the Board of Railroad Commissioners, to be in the neighborhood of six thousand dollars, and we apportion the expense between the municipality and the railroad company as follows: The Bangor Railway and Electric Company shall repair the bridge, and the town of Orono shall pay said Bangor Railway and Electric Company towards said repairs, when the Board of Railroad Commissioners shall have given its certificate of safety, the sum of twenty-five hundred dollars."

The bridge was originally built as a toll bridge by the Proprietors of the Stillwater Bridge, a corporation chartered and organized under chapter 390 of the Private and Special Laws of Maine, approved February 13, 1826, by which it was provided that "the tolls shall commence on the day when said Bridge is first opened for passengers and continue for and during the term of thirty years next ensuing." It does not appear when the bridge was "first opened for passengers." By an Act of the legislature, approved April 1, 1854, all rights under the charter were extended ten years, and authority was granted to the company to sell and to the town of Orono to buy the bridge at any time during the extension. Again, by an Act approved February 24, 1865 the charter was extended thirty years more, with provisions under which the bridge

could be sold to the town during that period. And, lastly, by an Act approved February 7, 1887 the charter was further extended for twenty years; "and all the rights, privileges, immunities and liabilities granted and insured, by the act of incorporation of said Proprietors, approved February thirteen eighteen hundred and twenty-six, by the act of extension approved April one eighteen hundred and fifty-four, and by the further act of extension approved February twenty-four eighteen hundred and sixty-five, are hereby continued and extended for said period of twenty years," which language is sufficient. to extend all the provisions for sale of the bridge as specified in the extensions referred to. This Act, however, did not go into effect until thirty days after the recess of the legislature passing it, or until April 17, 1887. The appellants introduced some evidence tending to support the claim that the extension granted by the Act approved February 24, 1865 expired by limitation in March 1887, and they maintain that because of such expiration of its chartered rights the bridge company became thereby divested of all its rights and property in the bridge, which then became and has continued to be the property of the State, and therefore that no title to the bridge was acquired by the town under the attempted purchase of it from the bridge company as hereinafter noted.

At a meeting of the inhabitants of Orono legally called for the purpose a committee, appointed at the previous annual meeting to negotiate a trade, if possible, with the Stillwater Bridge Company for the purchase of the bridge, made report recommending its purchase and that $500 be at once expended on it in repairs. The report was accepted. The town voted to buy the bridge and raised money for that purpose and to repair it. By deed dated May 7, 1889 the Proprietors of the Stillwater Bridge conveyed to the Inhabitants of Orono "The bridge of the said Proprietors over the Stillwater river in said town of Orono including piers, abutments, and all property of said Proprietors appurtenant to and connected with said bridge, together with all rights and franchises." Subsequently the selectmen of Orono granted permission to the Bangor, Orono & Oldtown Railway Company, the predecessor of the defend-

ant, to run its cars across this bridge, and this permission was approved by a vote of the town at its annual meeting held March 18, 1895. It is unquestioned that this bridge forms a part of a highway in the town of Orono, and that the town has kept the bridge in repair since its purchase in 1889. So much for the history of the bridge and its maintenance to the present time.

1. The first reason of appeal is predicated upon the contention that the statute here invoked "is by its terms applicable only to bridges ' erected ' by municipalities," and as this bridge was not "erected" by the town of Orono the Board of·Railroad Commissioners had no jurisdiction. We think this contention is not tenable.

It will be conceded that the letter of the language used imports the meaning attributed to it by appellants, "but the literal import of language used in statutes is, often, seemingly at variance with what was obviously intended. In such case the intention, and not the literal import is to govern." *Seiders* v. *Creamer*, 22 Maine, 559. The meaning and intent of this statute is more readily perceived, perhaps, if the purposes to be accomplished by it are considered. Under statutory provisions street railroads were permitted to pass along and over our highways and bridges which our municipalities were then maintaining safe and convenient only for travellers with their horses, teams and carriages. Hence arose a necessity that all the bridges in our highways over which any street railroad passes should be made and maintained sufficiently strong for this added use. To secure a prompt and efficient fulfillment of this necessity the statute in question was passed, giving the board of railroad commissioners full and complete control over the construction and maintenance, as to safety, of such bridges, with power to place the burden of the expense thereof upon those who ought justly to bear it.

It was obviously the intention of this statute to include in its provisions all highway bridges which municipalities were bound to maintain and keep in repair, and over which any street railroad passes, and full effect should be given to that intention. That which is within the intention of a statute, is within the statute, as if it were within the letter of it. *Holmes* v. *Paris*, 75 Maine,

559. "The real meaning of a statute is to be ascertained and declared, even though it seems to conflict with the words of the statute." *Landers* v. *Smith*, 78 Maine, 212.

But the appellants further say, as noted above, that the town did not acquire a good title to the bridge structure, and for that reason this statute cannot apply to it. We think it has not been made to appear that the town did not acquire title to the bridge. But it is not necessary here to pass upon the questions raised by the appellants involving the sufficiency of the town's title to this bridge structure, for the application of this statute to any particular bridge cannot, we think, depend upon the correct determination of nice questions respecting the title to the structure. Our interpretation of the statute is that it applies to any and all bridges which a municipality is bound to maintain and keep in repair, and over which a street railroad passes.

This Stillwater bridge, so called, has formed a part of a highway in Orono for upwards of eighty years; for sixty years it was a toll bridge, but more than twenty years ago Orono, by voluntary municipal action, took over the bridge, making it free forever after, and thereby assumed the duty to keep and maintain it as a part of its highway. It has performed that duty ever since. Under these facts and circumstances we hold that the statute applies to this bridge irrespective of the fact that it was not originally erected by the municipality of Orono, and irrespective also of the question whether or not the town acquired a good and sufficient title to the structure of the bridge in its voluntary purchase of it in 1889.

2. The second reason of appeal is that the Railway Company was obliged to keep this bridge in repair at its expense under the provisions of its charter, or that of its predecessor, that "Said corporation shall keep and maintain in repair such portions of the streets, town or county roads, as shall be occupied by the tracks of its railroad, and shall make all other repairs of said streets or roads which shall be rendered necessary by the occupation of the same by such railroad." Obviously the Railway Company was not necessarily required by this provision of its charter to maintain and keep in repair the entire structure of this bridge. The appellants claim

however that all the repairs made on this bridge were "rendered necessary by the occupation of the same by the said railroad" and, therefore, the expense of the same should have been borne wholly by the Railway Company under the provisions of the charter quoted. But it was a question of fact as to what extent the repairs were made necessary by the use of the bridge by the railroad, and that question was for the determination of the Board of Railroad Commissioners under the express provisions of the statute here in question. We need not here consider whether or not the Commissioners fairly and justly determined that question because that is necessarily raised under the last reason of appeal.

3. The third reason of appeal, that the Railway Company was bound by contract to maintain and repair this bridge, was not pressed in argument before this court, and the reason is not sustained.

4. Lastly, it is claimed by the appellants that the decision appealed from was unfair and unjust to the town of Orono, even if the statute applies to this bridge. They urge that the actual expense of the repairs was much less than the Commissioners determined, and that the burden of that expense should have been placed wholly or chiefly upon the Railway Company because its use of the bridge necessitated the repairs. This court has heretofore expressed its interpretation of another section of this statute, and its power and authority in appeals taken thereunder, in these words: "It seems to us that the evident intention of the legislature was to leave the whole question of how railroad crossings should be constructed and maintained, and how the expense of such crossings should be borne, in the first instance to the sound judgment and discretion of the Railroad Commissioners, and we think that their decision should not be altered or reversed unless manifestly illegal or unjust." Mr. Justice Walton in *Railroad Co.* v. *Street Ry. Co.*, 89 Maine, 328, page 335.

It is not for this court to render its decision in place of that of the Commissioners, but to determine if their decision is manifestly illegal or unjust. All the facts upon which the Commissioners acted

in making their decision are not before this court. They made a personal examination of the bridge before their decision was made. The repairs were made in accordance with plans and specifications approved by the Commissioners, but those plans and specifications are not before us. In short there is no sufficient evidence by which this court could determine in any satisfactory way the extent and character of the repairs made to this bridge. The appellants introduced evidence tending to show that the actual expense of the repairs could not have been as much as the contract price claimed to have been paid for the work by the Railway Company. But this evidence was not of the most satisfactory kind, being for the most part estimates of the amount of material and labor put into the work, and those estimates made by outside parties from their observation chiefly. The Commissioners estimated that the cost of the repairs to the bridge, made according to their requirements and to their satisfaction, would be "in the neighborhood of six thousand dollars." The appellants' witness, John W. Storrs, the Bridge Inspector of the Boston & Maine Railroad, who examined the bridge for the town before the repairs were made, estimated the cost of the repairs at $5000. The contract price which the Railway Company paid for the repairs was $5455. It does not seem to this court unreasonable for the Commissioners to accept the amount actually paid by the Railway Company for the repairs, under written contract, as the fair and just expense of the repairs to be apportioned under the provisions of the statute. Under the statute the Commissioners were given authority to apportion that expense between the railroad and the town "in such manner as shall be deemed by the board just and fair." They had full discretion in the matter. Their apportionment must stand unless manifestly illegal or unjust. In this case the Commissioners examined the bridge, determined what repairs were necessary, had plans and specifications made for those repairs, required the work to be done to their satisfaction, and when it was done gave their certificate of safety; they gave hearings to all parties in interest, and heard them, and their arguments, and made their decision that the town should pay a little

less than one-half of the expense of the repairs.   It is the opinion
of the court that the decision appealed from is not manifestly illegal
or unjust.

As none of the reasons of appeal have been sustained the entry
must be,

*Decision of Board of Railroad Commissioners
sustained and affirmed, without costs.*