THE CITY OF NORWALK *vs.* THE CONNECTICUT COMPANY (APPEAL OF THE CITY OF NORWALK FROM THE PUBLIC UTILITIES COMMISSION).

\* First Judicial District, Hartford, May Term, 1915.

THAYER, RORABACK, WHEELER, BEACH and GREENE, Js.

The question whether a street-railway company shall lay one or two tracks on a new highway bridge, and the kind or type of rails it shall use, are purely administrative matters, the decision of which by the Public Utilities Commission—unless made without evidence or plainly contrary to the evidence—is final and conclusive. But the apportionment of the cost of such a bridge between the municipality and the street-railway company, upon the basis of what is equitable, as required by chapter 207 of the Public Acts of 1911, presents a judicial question.   In aid of its proper solution this court can define the powers of the Superior Court and the extent of its duty in fixing the equitable share or portion which should be paid by the street-railway company, and can also determine whether, in a given case, these powers have been exceeded or transgressed, or these duties neglected or misapprehended.   It can also decide what considerations are or are not relevant and material in forming a judgment as to what is equitable.   Beyond this, however, this court cannot go, unless the judgment of the Superior Court be clearly inequitable; for within these limitations its judgment is final.

What is equitable in a given case under this statute is what is fair and just under the circumstances of that case.

In the present case the Superior Court disregarded the order of the Public Utilities Commission for a double track over the Norwalk River bridge, and estimated the amount which the street-railway company should pay toward the expense of the new bridge at what it would cost to strengthen the bridge for a single track only, and confined even this estimate to the additional cost of strengthening that portion of the bridge over which the cars were operated.   *Held* that in this respect the court erred: that it was bound to include, in its estimate, the element of cost involved in strengthening the bridge for a street-railway service of two tracks, and the cost of strengthening not merely the part over which the railway operated but the entire bridge; and furthermore, that the court erred in construing the Act of 1911 as limiting the street-railway company's share to the mere cost of strengthening the bridge, instead of ex-

\* Transferred from third judicial district.

tending its obligation, as the court should, to cover the company's equitable portion of the cost of constructing the new bridge.

While a municipality cannot build a bridge in excess of the public and street-railway requirements in size, design, form and ornamentation, and compel such railway, under the Act of 1911, to pay any part of such excessive cost, it may nevertheless provide for future as well as present railway and public needs in determining the character, strength, form, design and cost of the structure.

In determining the equitable share of the street-railway company, the cost to the company of paving should not be considered—it being governed by General Statutes, § 3837—nor the cost of rails, ties, ballast, wires, cables and other special work which are but the ordinary incidents of putting the railway in condition for operation. Moreover, the amount, if any, contributed by the State to the construction of the bridge, should not be considered in reduction of the street-railway company's share.

The situation in the present case reviewed, and considerations pointed out which would be helpful to a rightful decision of the question upon a retrial of the cause.

Argued May 11th—decided July 16th, 1915.

APPEAL from an order of the Public Utilities Commission requiring the defendant railway company to pay the sum of $16,614 as its equitable portion of the expense of constructing a new highway bridge over the Norwalk River, taken by the plaintiff city to and tried by the Superior Court in Fairfield County, *Burpee, J.;* facts found and judgment rendered fixing the amount which the defendant should pay at $4,906, from which the plaintiff appealed. *Error and new trial ordered.*

Reference may be had to 88 Conn. 472, 473, and to 89 Conn. 528, for further statements of fact.

The trial court found these facts: Since about 1867, and at the time the proceedings to secure a new bridge were begun, there was a wooden bridge, known as Washington Street bridge, which formed part of a highway, known as Washington Street, over the Norwalk River, which had become unsafe for public travel irrespective of the fact that the Connecticut Company operated a single-track railway over it.

The General Assembly authorized the town of Norwalk, by its bridge committee, to construct a new concrete bridge with steel draw and approaches in place of the wooden bridge. It also constituted the city of Norwalk the successor of the town of Norwalk, and continued the bridge committee with power to determine the location of the tracks and permanent structure of a street-railway upon this bridge. The committee consulted the Railway Company as to load, construction, supports and connection of trolley-wires and conduits, and as to the number of tracks to be laid. The Company first expressed its preference for two tracks, but later, and before the plans and specifications of the bridge had been completed, amended its request for two tracks and requested a provision for a single track.

Subsequently the plans of the bridge were adopted providing for two tracks, and the contract for the building of the bridge awarded, without consultation with the Company, prior to the award of the contract, as to the necessity of any repair or reconstruction of the old bridge, or their character, or as to the character or dimensions of the new bridge, or as to the apportionment of the expense thereof.

The total cost of the bridge is about $278,000. The extra cost of strengthening for one street-railway track is $4,106. A fifty, instead of a sixty, foot bridge of the same design as the bridge built, would cost about $228,000. The State, under the statute, paid toward the cost of the bridge $50,000. The bridge is constructed to provide for all the requirements of all traffic, including that of the Company's fifty-ton cars. East Norwalk is situated easterly of this bridge, and has a population of about five thousand; South Norwalk is situated westerly of this bridge, and has a population of about eleven thousand. East Norwalk is rapidly increasing in population, and in ten years it is esti-

mated will be the most thickly populated part of the town of Norwalk. This bridge is the most convenient way of travel to the Sound in this vicinity, and for travelers upon the shore highway. On the east, two tracks of the defendant approach the bridge, and three streets converge toward it on the west. The State has built a new road on the east of this bridge, and a large proportion of the shore road traffic passes over it, and the bridge is the shortest and easiest means of connection between this State road via South Norwalk to the Boston post road.

The traffic over the bridge is large and increasing. The sixty foot bridge, with a forty foot roadway and ten foot sidewalks on each side, is reasonably necessary for vehicular and foot traffic, irrespective of whether it contains one trolley-track or two. The bridge built is a reinforced concrete bridge of the most modern type, of massive but simple design, involving no elaborate expenditure for ornamentation, and its structural life will be for hundreds of years. It is well calculated to meet the demands of public travel in this locality. It is not of undue width or strength for present or prospective traffic.

The trolley-line upon this bridge is part of a single-track line extending from the railroad station in South Norwalk through East Norwalk to Broad River, a distance of about three and one half miles, with a branch extending about a mile from the easterly end of the bridge to Dorlon's Point. At the time of the destruction of the old bridge, the Company operated its single-track railway on a twenty-four-minute schedule, and this service accommodated the public. A second track on the new bridge will be of no material benefit to the Company without laying double tracks on its line, and until this is done the public will derive no advantage from two tracks on the bridge.

*John J. Walsh* and *Edward J. Quinlan*, with whom was *Edwin L. Scofield*, for the appellant (plaintiff).

*Harry G. Day*, with whom was *Benjamin I. Spock*, for the appellee (defendant).

WHEELER, J. The order of the Commission provided for: (1) two tracks across the bridge; (2) rails of a certain type; and (3) the payment by the Connecticut Company of a portion of the cost of the bridge.

Upon the former appeal to this court (88 Conn. 471, 91 Atl. 442) "... rief of the Company accurately recite.      'm that part of the order apportioning the cost that the appeal . . . was . . . taken in the name of the City of Norwalk." The Company, upon the appeal to the Superior Court, demurred to the reasons of appeal of the City, the demurrer was sustained, and the City took its appeal to this court. No one of the several grounds of the demurrer touched that part of the order of the Commission relating to the two tracks, or the kind of rail to be laid. We considered the several grounds of the demurrer, and held that the legality, as well as the expediency and propriety, of the order apportioning the expense of this bridge, were properly before the Superior Court for its re-examination *de novo*, and remanded the case with direction to overrule the demurrer. No further pleading was filed.

So that the single question before the trial court, upon its hearing on the merits, was as to the legality, expediency and propriety of that part of the order of the Commission apportioning the expense of the bridge. We do not intend to imply that that part of the order of the Commission relating to the number of the tracks and the kind of rail could, upon this record, have properly been made the subject of appeal. These were

purely administrative matters, and we expressly so held in *Norwalk* v. *Connecticut Co.*, 88 Conn. 471, 476, 91 Atl. 442. In repeated decisions we had long since determined this point. *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576, 37 Atl. 1080, 38 id. 708; *Spencer's Appeal*, 78 Conn. 301, 61 Atl. 1010. We judge from the Company's draft counter-finding that it claimed in the trial court, contrary to its position in this court upon the former appeal, that the trial court could and should pass upon the legality, expediency and propriety of this portion of the order of the Commission. It here maintains the same position, and rests its claim upon the unreasonableness of the order.

If an administrative order be so unreasonable as to justify judicial interference, it is within our judicial power, on proper appeal, to set it aside. *Norton* v. *Shore Line Electric Ry. Co.*, 84 Conn. 24, 78 Atl. 587. It is apparent from the finding and order of the Commission, that the decision as to the kind of rails and number of tracks was made upon evidence submitted to the Commission and after hearing regularly had. It is clear that the Commission did not act without evidence; there is nothing to indicate that it plainly decided contrary to the evidence. The issue as to the number of tracks was dependent upon a variety of considerations and was decided upon a conflict of evidence. In such a situation, it is quite immaterial that the trial court arrived at another conclusion from the facts surrounding this question, and it would be equally immaterial if we entertained another view. The question was administrative; it was decided, after hearing, upon a conflict of the evidence. The Commission say: "The evidence before the Commission indicated that a single track would afford sufficient track facilities for the present street railway traffic, across said bridge, but realizing the necessity of providing for the future, and

as tending to obviate congestion on this bridge, having a draw span, the Commission is of opinion that the number of tracks to be laid by said street railway company across said bridge and its approaches should be two, commonly designated as double tracks." These reasons seem sensible and likewise wise in their provision for the future, in view of the present population and traffic and the prospective increase in each, caring for the proper interests of both railway and public. The Company anticipated a future need for two tracks; its charter authorized it years ago. Provision for two tracks with the necessary overhead equipment must be made when a concrete bridge of this character is built. Justice to the architectural design and to reasonable public economy demanded this.

The trial court held the equitable portion of the expense of constructing the bridge, which the Connecticut Company should bear, to be the cost of strengthening the bridge sufficiently for one track. The General Assembly decided that the old bridge was "unsafe for public travel," and that a new bridge should be constructed in its place. The statute provided that so much of the expense of construction of a new bridge "as may be equitable" should be paid by the Company which operated its railway over such bridge. Public Acts of 1911, Chap. 207, p. 1486. What is equitable in a given case is what is fair and just under the circumstances of that case. It would be inadvisable, and perhaps harmful, to attempt a more specific definition. What is equitable represents the judicial judgment of what ought to be in the case presented.

This court can determine the bounds of power of the trial court and the extent of its duty under the law in fixing the equitable portion, and it may decide whether the trial court has exceeded the one, or transgressed, mistaken, or neglected the other. We can

decide what considerations should be regarded in an inquiry of that nature, and what should be deemed irrelevant and immaterial in the formation of the judgment as to what is equitable. Beyond that we may not go, unless the judgment be clearly inequitable. We cannot substitute our judgment for that of the trial court. Within these limitations its judgment is final. *Orono v. Bangor R. & E. Co.*, 105 Me. 428, 435, 74 Atl. 1022.

The total cost of the bridge, exclusive of overhead charges and legal and condemnation expenses, was $278,000, and the amount adjudged by the court to be the equitable portion of the Company was less than two per cent of this cost. As the bridge and its draw had to be built, in reasonable provision for the future, to accommodate two tracks and with a capacity to carry cars of the weight of fifty tons—a much greater load than the present or prospective demand of vehicular traffic requires,—this award, upon its face, would seem to be inequitable. The additional· expense of strengthening the bridge for the street-railway service was an element of expense due exclusively to a necessary provision for the railway service, and in equity the Railway Company should pay this. Since the order of the Commission for two tracks over this bridge was not before the trial court, it was required, in the ascertainment of the equitable portion the Railway Company should pay, to include in its estimate the element of cost involved in strengthening the bridge for a street-railway service of two tracks. Its refusal to do this was error.

We understand from the record that the court confined the equitable portion of the additional cost of strengthening, to that part of the bridge over which the cars operated on a single track. Plainly the bridge was not thus strengthened merely in the part over which

the railway operated, but of course in all its parts. So that the element of cost of strengthening must include the cost of strengthening the entire bridge sufficiently for a two-track railway.

We think the trial court was also in error in construing the Act as in this case limiting the equitable portion of the expense of the new bridge to the cost of strengthening. In effect we held, on the former appeal, that the railway was, by § 1 of chapter 233 of the Public Acts of 1909 (p. 1179), as amended by § 1 of chapter 207 of the Public Acts of 1911 (p. 1486), required to pay its equitable portion of the expense of constructing the bridge, and that the duty of ascertaining this amount was committed to the Commission. The language of the Act, and the legislative intent as therein expressed, were so clear and definite as to leave open no other conclusion, and to require no argument in support of this interpretation. "So much of the expense of repairing, strengthening, constructing, or reconstructing such bridge as may be equitable shall be paid by the company operating such railway," the Act recites. The Railway Company shall pay, not the equitable portion of one of these items, but of any one or all. Payment by the Railway Company of the additional cost of strengthening does not meet the statutory obligation of paying its equitable portion of the expense of constructing the new bridge. Nor would payment by the Railway Company of its equitable portion of the expense of that part of the bridge occupied by the Railway Company in the operation of its cars meet its statutory obligation. The intent of the Act is manifest: the Railway Company is to pay its equitable portion of the expense of the entire bridge, that is, it is to pay its fair and just proportion of the expense of the new bridge, no more and no less. Benefit to, and use by, the Railway Company of the bridge, present and prospective, are decisive factors in

fixing its equitable portion of the expense. The apportionment must be made once for all; therefore it is that the prospective use, as well as the present use, of the bridge must be regarded.

The City advances two theories, upon one or the other of which it insists the equitable portion of the Railway Company should be found. We cannot, for the reasons stated, adopt, as matter of law, any particular theory as a guide to the trial court in fixing this award. Nor do we think that any definite theory can be evolved which shall settle the bounds of what is and what is not equitable. The solution of that must take into account many considerations, no one of which may be excluded. We may point out considerations which, if present in this and related cases, may affect this issue and would be helpful in deciding it; and this, we think, is as far as we should go. Among these are: The additional cost of strengthening the entire bridge so as to carry the load of cars operated over two tracks. The increased size of the bridge due to provision for two tracks. The part of the surface of the bridge occupied by the Railway Company in the operation of its cars, and the right of exclusion from this part of all other traffic when required for its own use. The permanent occupation of the bridge by the Railway Company, not alone by its tracks, but by its poles, wires and equipment. The insurance of permanency in the installation of the railway's overhead equipment upon the bridge. The special construction required for its exclusive service. The relative use of that part of the bridge devoted to the railway traffic by the railway and by the other traffic thereon. The relative wear and tear upon the bridge and its draw by the railway and by the other traffic thereon. The character and permanency of this bridge, and the cost of its maintenance and the depreciation upon its investment. The impaired life cost

of the bridge due to the railway. The saving to the Railway Company in the maintenance and cost of operation. The decrease in liability for accident, owing to the increased width of bridge and draw. The relief from congestion due to the increased width of the draw, and the saving of time in operation of cars by the change from a swinging to a lift draw. These are among the considerations which may properly aid in ascertaining the equitable portion of the expense of the bridge which the Railway Company shall pay.

The community cannot build a bridge beyond the public and railway requirements in size, design, form and ornamentation, and compel the Railway Company, under this statute, to pay any part of the cost not needed for the public and railway requirements. But the community may provide for future as well as present railway and public needs, in determining the character, strength, form, design and cost of the bridge. The bridge constructed did not offend against this obvious rule of fairness. It is found to be a reinforced concrete bridge of most modern type, of massive but simple design, involving no expenditure for elaborate ornamentation, and its structural life will be for hundreds of years, and it is well calculated to meet the demands of public travel in its locality.

In fixing the award, the cost to the Railway Company of paving should not be considered; the Company's obligation as to this is governed by General Statutes, § 3837. So, too, the cost of rails, ties, ballast, wires, cables, and other special work are not to be considered. These are the ordinary incidents of putting the railway in condition for fulfilling its duty of operation. The contribution made by the State should not be considered; that was made for the express purpose of relieving the community from the payment of a part of the cost which the public should bear, since bridges of this char-

acter upon main thoroughfares are of so general use to the public both within and from without the State. This adds no burden to the Railway Company, since the statute limits its payment of the entire cost to what is equitable, and this means to its equitable share or portion.

The proportion which a railway or railroad company is required to pay for the construction of a new bridge, or in related cases, in other jurisdictions, will furnish little or no help in ascertaining this equitable portion, since each case is governed by its own facts, and the sum awarded determined somewhat by the public policy of each jurisdiction.

Chapter 219 of the Public Acts of 1907 provides that the railway shall conform the grade of its tracks to the established grade of the highway when changed, and shall pay one half the cost of necessary excavating, filling, resurfacing, paving, or other construction work within lines two feet on the outside of each outer rail of such tracks. Had the approaches to the bridge been filled as was first contemplated, this would have been the method of fixing the Railway Company's portion of this expense exclusive of the paving; and presumably it represents what the General Assembly esteemed equitable in such a case. While not at all controlling, it is a circumstance properly to be considered by the trial court in making the award in this case. The fixing of this award is of large consequence to the parties in interest, and the determination of the principles underlying such award will necessarily affect other cases of like character. This case has been twice tried; it is desirable that the new trial may finally dispose of it. For these reasons, we have endeavored to consider the questions involved in such way as to help, so far as we now can, in its ultimate disposition.

In view of the conclusions reached we omit passing

upon the motion to correct, not intending by this course to indicate our approval of the findings complained of.

There is error and new trial is ordered.

In this opinion the other judges concurred.