## CONTROL MODULE, INC. *v.* JOHN C. GROPPO, COMMISSIONER OF REVENUE SERVICES

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 0311981
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed March 17, 1989

*Reid & Riege,* for the plaintiff.

*Clarine Nardi Riddle,* attorney general, and *Carl F. Yeich,* assistant attorney general, for the defendant.

SATTER, J. The plaintiff, Control Module, Inc., moves for summary judgment in this appeal from an assessment of additional corporation business taxes that the defendant commissioner of revenue services (commissioner), determined to be due under General Statutes § 12-221a.

The following facts are either stipulated or undisputed: Control Module, a Delaware corporation with its principal business office in Enfield, engaged in the business of manufacturing, selling and servicing optical scanners and related equipment during the relevant fiscal years of 1981, 1982 and 1983. The plaintiff conducted its business in Connecticut and in other states, but, in fiscal year 1981, it was subject to a corporation business, net income or franchise tax only in Connecticut and Virginia. In fiscal years 1982 and 1983,

it was subject to such taxes only in Connecticut, Virginia and California. As a corporation conducting business in, and subject to such taxes in several states, Control Module was subject to General Statutes § 12-218.

For all of Control Module's fiscal years that are relevant to this appeal, § 12-218 provided that the portion of a corporation's net income to be apportioned to Connecticut for the purpose of determining its state corporate tax liability was the corporation's net income for the fiscal year multiplied by an "apportionment fraction." Under § 12-218, for a corporation, such as the plaintiff, engaged in manufacturing and in the selling of property, the apportionment fraction was to be determined from the average of three fractions. The numerators of these fractions contained the value of a corporation's property used within Connecticut, wages paid for services in Connecticut, and receipts earned from sales and other sources within Connecticut. The denominators contained the value of the corporation's property, wages and receipts everywhere. For the plaintiff's 1982 and 1983 fiscal years, § 12-218 provided that the receipts fraction was to be counted twice in determining the apportionment fraction.

On its Connecticut corporate tax returns for its 1981, 1982 and 1983 fiscal years, Control Module used the apportionment formula provided in § 12-218 to compute the amount of its corporate tax liability. The plaintiff did not, however, submit its tax returns with this motion.

For all of Control Module's fiscal years that are relevant to this appeal, § 12-221a provided that the department of revenue services could apply a method of apportionment of a corporation's net income different from that specified in § 12-218. This method was only applicable, however, where the § 12-218 formula

resulted in an apportionment of net income to Connecticut which was "inequitable" to the state.

After an audit of Control Module's returns for the fiscal years in question, the department of revenue services issued a determination letter, dated October 31, 1985, in which it concluded that the § 12-218 formula "does not attribute to Connecticut a portion of the net income which is equitable and truly reflective of . . . [Control Module's] activities in Connecticut." The department determined that § 12-221a "is appropriate in this matter in order to correct the inequities created by the statutory formula (Section 12-218)." The apportionment method used accepted the property and wages fractions of § 12-218, but changed the gross receipts fractions as follows: the numerator consisted of gross receipts from sales in Connecticut and the denominator consisted of gross receipts from gross sales in Virginia only in 1981 and in Virginia and California only in 1982 and 1983. The gross receipts from sales in all other states were excluded. This is an application of the so-called "throw-out rule," which excludes from the denominator of the gross receipts those sales in states which do not impose on the subject corporation an income, franchise or corporation business tax.

The consequence of the department's recalculation was to assess the plaintiff with a tax deficiency and interest through February 28, 1989 as follows:

|       | Tax Deficiency | Interest |
|-------|----------------|----------|
| 1981  | $10,832        | $16,096  |
| 1982  | 30,947         | 39,798   |
| 1983  | 439            | 477      |
| TOTAL | $42,218        | $56,371  |

TOTAL $98,589

The plaintiff appeals the department's determination pursuant to General Statutes § 12-237. Such an appeal

is heard de novo by this court. *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 144–45, 527 A.2d 672 (1987); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 421, 521 A.2d 569 (1987). Under that statute the "court may grant such relief as may be equitable," and, in fact, the court is obligated to determine what " 'relief as may be "equitable.' " *Schlumberger Technology Corporation* v. *Dubno,* supra, 422.

The plaintiff asserts two grounds in its motion for summary judgment: (1) § 12-221a, which vests the tax commissioner with the power to adopt another method of apportionment, when the § 12-218 method of apportionment subjects the company to taxation on a lesser portion of its net income than is "equitably attributable" to the state, requires that such other method be implemented by department regulations and none was adopted and applied in this case; (2) the "throw-out rule," which the department did apply in this case, is a rule of general applicability, which must be adopted as a department regulation, and no such regulation was adopted under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-189.

I

A battle has long raged within administrative law as to whether administrative agencies may adjudicate controversies on a case-by-case basis, from which will evolve a set of standards, or whether they are required to formulate general rules by the adoption of regulations. On the one hand, in the leading case of *SEC* v. *Chenery Corporation,* 332 U.S. 194, 202–203, 67 S. Ct. 1575, 91 L. Ed. 1995, reh. denied, 332 U.S. 747, 68 S. Ct. 26, 92 L. Ed. 367 (1947), the United States Supreme Court noted: "Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others

must be adjusted to meet particular, unforeseeable situations. . . . And the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency."

On the other hand, in *Holmes* v. *New York City Housing Authority,* 398 F.2d 262, 265 (2d Cir. 1968), where the housing authority had annually 90,000 applicants for 10,000 homes, the court held that "due process requires that selections among applicants be made in accordance with 'ascertainable standards . . . .' " For a discussion of this tension between adjudication and rule making, see 2 K. Davis, Administrative Law (2d Ed.) § 7:26, pp. 128 et seq.

Significantly, § 12-221a, which gives the tax commissioner the power to adopt another method of apportionment of a corporation's net income when he determines that the standard method of § 12-218 does not "equitably" attribute net income to this state, is similar to § 18 of the Uniform Division of Income for Tax Purposes Act (act). That act provides for apportionment by the property, payroll and sales factors, similar to § 12-218, and, in § 18, provides that if that manner of apportionment does not fairly represent the taxpayer's business activities in the state, the tax administrator may then employ "any other method to effectuate an *equitable* allocation and apportionment of the taxpayer's income." (Emphasis added.)

The act, drafted in 1957 by the national conference of commissioners on uniform state laws, has been enacted by twenty-five states. 7A U.L.A., p. 331 (1985). In addition, two states and the District of Columbia have enacted the act by becoming parties to the multistate tax compact. 1 J. Hellerstein, State Taxation, Corporate Income and Franchise Taxes (1983) p. 498. No court in any of those states has declared the imple-

mentation of § 18 of the act or the comparable article IV (18) of the multistate tax compact dependent on the prior adoption of regulations. Id.

It has been held that § 18 of the act should be narrowly construed; *Deseret Pharmaceutical Co.* v. *State Tax Commission,* 579 P.2d 1322, 1326 (Utah 1978); and that regulations are desirable to achieve uniform interpretation of the act by the states. *Twentieth Century-Fox Film Corporation* v. *Department of Revenue,* 299 Or. 220, 230–31, 700 P.2d 1035 (1985). No case holds, however, that the enforcement of § 18 is illegal without regulations. The two cases upon which the plaintiff most relies do not support its claim on this point.

In *Northwest Airlines, Inc.* v. *State Tax Appeal Board,* 221 Mont. 441, 720 P.2d 676 (1986), the court struck down the inclusion of overflight mileage of an interstate airline carrier in the standard apportionment formula for computing a corporate license tax because it was a "rule" required to be adopted under the state administrative procedure act. It did not require, however, that the department of revenue adopt regulations before implementing the discretion granted to the department to alter the standard apportionment method where that method does " 'not fairly represent the extent of the taxpayer's business activity in this state.' " Id., 677.

*Metromedia, Inc.* v. *Director, Division of Taxation,* 97 N.J. 313, 478 A.2d 742 (1984), involved New Jersey's taxing, under the state's corporation business tax act, of an out-of-state corporation that operated New York radio and television stations. The New Jersey act provides for apportionment of the net income of a corporation operating in several states in a manner similar to that provided in § 12-218, and vests in the tax

director broad general discretion, similar to that provided in § 12-221a, to " 'apply . . . any other similar or different method calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to the State.' " Id., 323. The court held that an "audience-share" method used by the tax director to allocate the corporation's income to New Jersey constituted a rule that required prior adoption of a regulation. It did not hold, however, that the broad discretion given to the tax director to apply any other method required a prior adoption of regulations.

In fact, the New Jersey Supreme Court specifically approved the wide discretion granted the tax director. The court said: "Clearly, the language of the statute vests broad authority in the Director to determine what income-producing activity of the taxpayer is reasonably referable to its business in New Jersey, so that this income can appropriately be used in the measure of the franchise tax. The statutory scheme recognizes that this is a highly specialized decision that entails considerable discretion. . . . The Director's discretion is bound by standards of 'sound accounting principles.' . . . It is nonetheless as broad as necessary to enable the Director to determine the fair value of the taxpayer's net worth . . . as well as the percentage of net worth and net income that can be attributed to New Jersey." (Citations omitted.) Id., 324.

Hellerstein concludes that § 18 of the act "clearly sets up adequate standards for administrative action." 1 J. Hellerstein, supra, p. 605. Further, in F. Keesling & J. Warren, "California's Uniform Division of Income for Tax Purposes Act," 15 U.C.L.A. L. Rev. 156, 170 (1967), the observation is made that precise bounds for applying § 18 are neither feasible nor desirable because of the variety of situations in which equitable appor-

tionment may be appropriately made. The authors say: "In the allocation of income, unusual situations, which should be excepted from the application of general rules, frequently arise. Such situations may be impossible to anticipate or difficult to describe with sufficient precision to permit drafting of a provision in the statute setting forth precisely the rules to be applied." Id.

In Connecticut, a law granting an administrative agency the power to do what is "equitable" has been upheld without the prior adoption of regulations. In *Norwalk* v. *Connecticut Co.*, 89 Conn. 537, 94 A. 988 (1915), the Supreme Court construed a statute authorizing the public utilities commission to apportion "as may be equitable," between the municipality and the railroad company, the cost of constructing a new bridge, as follows: "What is equitable in a given case is what is fair and just under the circumstances of that case. It would be inadvisable, and perhaps harmful, to attempt a more specific definition. What is equitable represents the judicial judgment of what ought to be in the case presented." Id., 543.

In its summary judgment motion, the plaintiff seeks to have this court hold that the commissioner, statutorily authorized to act "equitably," violates administrative law unless he first adopts regulations setting forth standards to define and restrict his discretion. No Connecticut cases so construe § 12-221a and no cases from other states so construe § 18 of the act.

In light of the manner in which the issue is presented here, this court is not prepared to render such a decision as an abstract proposition. The issue is better left to a determination after a trial, in which all the facts will be elicited in their full complexity as to the interrelationship between § 12-218 and § 12-221a when applied to the plaintiff.

## II

The plaintiff's second contention is that the "throwout rule" used by the defendant is a rule of general applicability, which must be adopted as a regulation before it can be applied to fix the plaintiff's tax liability, and, since it was not so adopted, the plaintiff must prevail on this appeal.

The Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., provides that the term "regulation" means "each agency statement of general applicability . . . that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency." General Statutes § 4-166 (7). The label that the agency puts upon its statement of policy is not determinative of whether it is a regulation, required to be adopted in accordance with the UAPA. "[R]ather it is what the agency does in fact." *Lewis-Mota* v. *Secretary of Labor,* 469 F.2d 478, 481–82 (2d Cir. 1972).

In *Salmon Brook Convalescent Home* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 417 A.2d 358 (1979), the commission on hospitals and health care applied "guidelines" as to gross revenue, owner's compensation and nursing director's salary as the basis for denying the request of a nursing home for an increase in patient per diem rates. The basis for the Supreme Court's holding that these guidelines were regulations, which were required to be adopted pursuant to the UAPA, was that "[u]se of the 'guidelines' has determined rights and obligations of Salmon Brook and of others in the past and will have a substantial impact on the rights and obligations of those who may appear before the commission in the future . . . . Decisions utilizing the 'guidelines' were consistently made by the commission." Id., 363.

Likewise, in *Walker* v. *Commissioner,* 187 Conn. 458, 446 A.2d 822 (1982), the policy of the department of income maintenance to require its prior approval of moving expenses, as a condition of reimbursement, was found to be a regulation because it was embodied in an interdepartmental bulletin and was applied to all recipients under the aid to families with dependent children program seeking help with their moving expenses.

In the present case, there is no evidence that the "throw-out rule" has been applied by the commissioner in the past, or that it is consistently being applied in the present, or that it will have a substantial impact on the rights and obligations of those corporate taxpayers who may appear before the commissioner in the future. Whether the "throw-out rule" is one of general applicability within the meaning of § 4-166 (7) is a question of fact which cannot be decided by this motion, but must be determined after a trial.

On the basis of the foregoing, the plaintiff's motion for summary judgment is denied.

Because this court has spent many hours researching the issues here involved, it will retain jurisdiction of this case for trial. Counsel are urged to agree among themselves upon a trial date and this court will endeavor to make itself available on that date.