[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by plaintiff taken pursuant to Conn. Gen. Stats. 12-237 contesting a decision of the defendant Commissioner of Revenue Services (Commissioner) approving an assessment of additional Corporation Business Tax for Plaintiff's 1982 Income Year and Connecticut General Corporation 1979 to 1981 Income Year in the total amount of 53, 721, 343 plus interest.
The following is a summary of the facts that are contained in a stipulation of facts filed with the court on June 29, 1990.
The plaintiff is a Delaware corporation which during all relevant periods wholly owned Connecticut General Corporation (CGC), Connecticut General Fire and Casualty Insurance Company (CGFCIC) and Aetna Insurance Company (Aetna). From January 1, 1981 through June 30, 1981, CGC was known as Connecticut General Insurance Corporation and was chartered, licensed and doing insurance business in Connecticut. From July 1, 1981 through December 31, 1981, CGC was chartered only as a general business corporation in Connecticut and not chartered, licensed or doing any insurance business in Connecticut. During the period from July 1, 1981 through December 31, 1981, CGC conducted business solely within the State of Connecticut, except for the ownership of a piece of real property in Pennsylvania. The total gross receipts of CGC for 1981 were $445,407,735 while the gross receipts of CGC from its property in Pennsylvania for 1981 were $11,976.
CGFCIC was chartered as a Connecticut insurance corporation on May 13, 1969. CGFCIC remained inactive until 1979 when it attempted to acquire an insurance company called ERC, Inc. During 1980, the attempted acquisition of ERC, Inc. was abandoned and CGFCIC wrote off the acquisition related expenses. For the period from January 1, 1980 through December 31, 1981, CGFCIC conducted business solely within Connecticut and ERC, Inc. conducted business nationwide. CT Page 3279 CGFCIC was not licensed to transact insurance business by the Connecticut Insurance Department until April 19, 1983, and did no business prior to that date except for the attempted acquisition of ERC, Inc. The write-off of the expenses involved in the attempted acquisition of ERC, Inc. resulted in a loss of $6,758,052 for 1980 and $3,890 for 1981, which CGFCIC apportioned 100% to Connecticut.
On November 2, 1981, CGC sold certain securities for their fair market values to Aetna, which resulted in a capital loss for CGC in the amount of $28,672,919. For all relevant periods, CGC and Aetna were part of a group filing a consolidated return for purposes of the Federal Corporation net income tax laws, and for its 1981 income year CGC had capital gains in excess of capital losses (including the loss on the sale to Aetna).
On July 23, 1987, defendant made a determination that additional Connecticut Corporation Business Tax was due by plaintiff in the amount of $3,721,343 plus interest. The determination resulted from an audit of plaintiff's income year ending December 31, 1982 and the income years of CGC ending December 31, 1979, December 31, 1980, and December 31, 1981. The determination was based in part on defendant's use of different apportionment fractions for CGC's 1981 income year and CGFCIC's 1980 and 1981 income years than those used by plaintiff, and in part on defendant's disallowance of the capital loss incurred by CGC on the sale of securities to Aetna on November 2, 1981.
Although not contained in the stipulation of facts, it is important to note that plaintiff states in its complaint that it paid defendant $7,211,460.71 under protest, representing the full amount of tax assessed plus interest thereon to August 21, 1987, the date of the complaint. This fact is uncontested by defendant.
Conn. Gen. Stats. 12-236 authorizes the Commissioner to hold a hearing on an aggrieved taxpayer's application for a correction and it authorizes the Commissioner to make an order that appears to him just and lawful after that hearing.
Conn. Gen. Stats. 12-237 allows "[a]ny taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services . . . [to] take an appeal therefrom to the superior court." The plaintiff is aggrieved by the Commissioner's decision approving an assessment of additional Corporate Business Tax against it and therefore has standing to bring this appeal. (Evidence, Defendant's Ex. 1). CT Page 3280
Conn. Gen. Stats. 12-237 permits an aggrieved party taking an appeal from a decision of the Commissioner to do so by filing an appeal in the superior court within one month after service upon the taxpayer of notice of such decision.
In this case, the Commissioner sent plaintiff a letter of decision, dated July 23, 1987 (Evidence, Defendant's Ex. 1) and plaintiff filed this appeal in the superior court on August 21, 1987 (Court File, Appeal Petition), within the one month requirement. Therefore, this appeal is timely filed.
"The plaintiff's appeal to the trial court was taken, not under the Uniform Administrative Procedure Act, which excludes tax appeals; General Statutes 4-186; but under12-237." Schlumberger Technology Corporation v. Dubno,202 Conn. 412, 421 (1987). A tax appeal pursuant to Conn. Gen. Stats. 12-237 affords a taxpayer a trial de novo. Id.
Conn. Gen. Stats. 12-237 authorizes the trial court to "grant such relief as may be equitable." "What is equitable in a given case is what is fair and just under the circumstances of that case . . . [and] represents the judicial judgment of what ought to be in the case presented." Control Module, Inc. v. Groppo, 41 Conn. Sup. 271, 278 (1989, Satter, J.) (citations omitted).
Conn. Gen. Stats. 12-237 provides that the trial court, in granting equitable relief in a situation where such tax has been paid prior to the granting of relief, "may order the treasurer to pay the amount of such relief, with interest at the rate of nine percent per annum to the aggrieved taxpayer." Further, "upon all such appeals which may be denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state." Id.
"The burden of proving an error in a deficiency assessment is on the plaintiff." H.B. Sanson, Inc. v. Tax Commissioner, 187 Conn. 581, 586 (1982) (citations omitted).
Issues on Appeal
1. The Audit Division's Adjustment of CGC's Tax Liability for the 1981 Income Year
In its memorandum, plaintiff contends that the commissioner illegally sustained its audit division's adjustment of CGC's tax for the 1981 income year which applied CT Page 3281 Conn. Gen. Stats. 12-218a to calculate the tax liability for that entire income year. Specifically, plaintiff maintains that CGC correctly calculated its tax for the 1981 income year by applying section 12-218a to the first half of the year wherein it was a domestic insurance company and by applying section 12-218 to the second half of the year wherein it was rechartered as a general business corporation.
"For a multistate corporation that is taxable both within and without the state, the Connecticut corporate business tax is calculated by taxing the corporation, at current rates, upon the fraction of its entire net income that is apportioned to Connecticut accordance with one of the formulae set out in General Statutes 12-218." Dubno,202 Conn. at 415. However, section 12-218a sets forth a special apportionment rule for domestic insurance companies.
Plaintiff argues that because section 12-218a provides that it is only applicable to tax imposed on the net income of domestic insurance companies by Conn. Gen. Stats. 12-214, it cannot be applied to a period in which a taxpayer is not a domestic insurance company. The Commissioner maintains, to the contrary, that if a taxpayer is a domestic insurance company for any portion of a taxable year, Conn. Gen. Stats. 12-218a
applies to the entire taxable year because it incorporates the definition of an income year.
The construction of a statute on an issue such as this which has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference. Dubno, 202 Conn. at 423. When a taxpayer's claim concerns an imposition of a tax, any ambiguity in the statutory formulation must be resolved by strictly construing the statute against the tax authority and in favor of the taxpayer. Plasticrete Block Supply Corp. v. Commissioner, 216 Conn. 17, 25 (1990). On the other hand, any ambiguities in a deduction or exemption from otherwise taxable income in a statute "are considered matters of legislative grace and are thus strictly construed against the taxpayer." Dubno, 202 Conn. at 420. Conn. Gen. Stats. 12-218a concerns the apportionment of any tax imposed on domestic insurance companies and therefore any ambiguity in the statute must be strictly construed against the Commissioner and in favor of the plaintiff.
Section 12-218a provides no guidance for a company switching from a domestic insurance corporation to a general business corporation during an income year nor has the Commissioner enacted any regulations regarding such a situation. In fact, section 12-218a imposes a tax based on CT Page 3282 insurance premiums received during the income year and CGC could not have received insurance premiums during the portion of the year in which it was no longer an insurance company. Further, section 12-218a applies to domestic insurance companies and CGC was a general business corporation at the close of the income year. In construing section 12-218a most favorably to the plaintiff, CGC correctly concluded that the statute applied only to the portion of the 1981 income year in which it was a domestic insurance company. Therefore, the plaintiff's appeal on this issue must be sustained.
2. The Audit Division's Disallowance of CGFCIC's Operating Loss for its 1980 and 1981 Income Years
In its memorandum, plaintiff contends that the Commissioner illegally sustained its audit division's disallowance of CGFCIC's loss apportioned to Connecticut for the 1980 and 1981 income years. The Commissioner decided that section 12-218a was properly applied to CGFCIC for that period because it was an insurance company. (Evidence, Defendant's Ex. No. 2, Commissioner's Decision). The Commissioner reasoned that because CGFCIC had no premium income for that period, its apportionment percent to Connecticut under section 12-218a was zero, allowing disallowance of its loss. Id.
Conn. Gen. Stats. 12-218a requires that "any tax imposed on domestic insurance companies by section 12-214 shall be imposed on the base specified for such tax apportioned to this state by multiplying the base by a fraction." Conn. Gen. Stats. 12-218a. That fraction which the tax base is to be multiplied by represents the gross direct premiums received from sources located within the state divided by the gross direct premiums received from all sources. Id.
Plaintiff argues that section 12-218a did not apply to CGFCIC for the 1980 and 1981 income years because it did not qualify as a domestic insurance company within the meaning of that statute since it was not doing insurance business. The Commissioner maintains to the contrary that section12-218a applied to that period because it was an insurance company that transacted business.
"`Domestic insurance company' includes any insurance company which has been chartered . . . within or under the laws of this state." Conn. Gen. Stats. 38-1(b) (rev'd to 1989). An insurance company is defined for any statute affecting insurance companies by Conn. Gen. Stats. 38-1(a) (rev'd to 1989) to include "any corporation . . . doing any kind of form of insurance business." (Emphasis added). Although CGFCIC was CT Page 3283 chartered as a Connecticut insurance company it was not "doing any kind of form of insurance business" during the 1980 and 1981 income years because its only activity was a failed attempt to acquire an insurance company called ERC, Inc. Therefore, because CGFCIC was not "doing any insurance business", it did not qualify as a domestic insurance company and Conn. Gen. Stats. 12-218a did not apply.
Plaintiff further contends that defendant's position is incorrect because the legislature did not intend such an irrational result. Specifically, plaintiff argues that according to mathematical principles, zero gross direct premiums within the state divided by zero total gross direct premiums does not equal zero as the Commissioner found. Plaintiff has presented a section of an encyclopedia as evidence that zero divided by zero is an undefinable concept, making the apportionment formula unusable in such a situation. (Evidence, Plaintiff's Ex. A, World Book Encyclopedia).
Statutory construction requires the court to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. All Brand Importers v. Department of Liquor Control, 213 Conn. 184, 194 (1989). As discussed above, section 12-218a is a taxing statute which must be strictly construed against the taxing authority and in favor of the taxpayer.
The apportionment formula in section 12-218a is the percentage of total direct gross premiums that are received from sources within the state. The section 12-218a
apportionment formula is multiplied by the total tax base applied to a domestic insurance company under section 12-214 so that the taxpayer is only taxed for the portion of its business attributable to Connecticut. In strictly construing section12-218a against the taxing authority, the legislature did not intend its apportionment formula to be used to apportion zero percent of CGFCIC's base tax to Connecticut when 100% of its business was done in Connecticut. The bizarre result of a zero percent apportionment formula in this case is due to the fact that the taxpayer was not "doing any insurance business" to have any gross premiums from which to calculate an apportionment formula. Therefore, the legislature did not intend the section 12-218a apportionment formula to apply in a situation such as this where the taxpayer is not "doing any insurance business."
For the above reasons, the plaintiff's appeal on this issue must be sustained. CT Page 3284
3. The Audit Division's Disallowance of CGC's Loss on the Sale of Securities to Aetna for its 1981 Income Year
In its memorandum, plaintiff contends that the Commissioner illegally sustained its audit division's disallowance of CGC's loss on its sale of securities to Aetna for its 1981 income year. The Commissioner maintains to the contrary, that pursuant to Conn. Gen. Stats. 12-226a, he has the power to make an adjustment to the deduction because the transaction was not at arm's length.
Plaintiff argues that CGC is entitled to deduct its capital loss from its sale of securities to the extent of its capital gains for the 1981 income year under the clear and unambiguous language of Conn. Gen. 12-217. The statutory construction of section 12-226a is controlling on this issue, not section 12-217, because section 12-226a authorizes the Commissioner to adjust items of income and deductions in certain circumstances.
"A statute is to be read as a whole with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." Ford Motor Credit Co. v. B. W. Beardsley, Inc., 208 Conn. 13, 18 (1988) (citations omitted). The duty of a reviewing court, where the words of a statute are clear, is to apply the intention expressed by the words used. Id.
Conn. Gen. Stats. 12-226a provides:
 If it appears to the commissioner of revenue services that any agreement, understanding or arrangement exists between the taxpayer and any other corporation . . . whereby the . . . income . . . of the taxpayer within the state is . . . inaccurately reflected, the commissioner of revenue services is authorized and empowered, in his discretion and in such manner as he may determine to adjust income, deductions and capital. (Emphasis added).
Section 12-226a gives the Commissioner discretion to adjust income or deductions in an way he deems proper where it appears to him that the taxpayer's income is inaccurately reflected due to an arrangement between the taxpayer and any other corporation. Therefore, it was within the Commissioner's discretion to disallow CGC's loss on the sale of securities to Aetna for the 1981 income year because he determined that the transaction was not at arm's length and created artificial losses. The evidence reasonably supports the Commissioner's CT Page 3285 determination because it was based on the fact that the sale of the securities was between two corporations owned by the same parent; both corporations filed a combined tax return for purposes of the State Corporation Tax; and the sale was made at a time when the market value of the securities caused a large loss.
Plaintiff disputes the Commissioner's application of section 12-226a arguing that it does not allow the Commissioner to make an adjustment because the securities were sold for the fair market value which allowed the fair profits to be reported and prevented an improper loss. Specifically, plaintiff's argument is based on the portion of section 12-226a which provides
 where . . . (b) any taxpayer, a substantial portion of whose capital stock is owned either directly or indirectly by another corporation, enters into any transaction with such other corporation on such terms as to create an improper loss or net income, the commissioner of revenue services may include in the entire net income of the taxpayer the fair profits, which, but for such agreement, arrangement or understanding the taxpayer might have derived from such transaction. (Emphasis added).
This section of the statute states a type of adjustment that the Commissioner may make when a taxpayer enters into a transaction with a related corporation. "The term `may' imparts discretion." McIlwain v. Moser Farms Dairy, Inc.,40 Conn. Sup. 230, 232 (1985) citing Ridgeway v. Ridgeway180 Conn. 533, 540 (1980). This portion of the statute is a discretionary adjustment and as stated above, the statute gives the Commissioner the authority to make an adjustment that in his discretion is appropriate. Therefore, plaintiff's appeal on the issue must be dismissed.
Next, plaintiff argues that the case of Skaarup Shipping Corporation v. Commissioner, 199 Conn. 346 (1986) is distinguishable from this case. Plaintiff makes this argument on the premise that the Commissioner would rely on this case to support his position. Because the Commissioner did not rely on the Skaarup case to support his position, it is unnecessary for this court to consider that argument.
Further, plaintiff argues that Conn. Gen. Stats.12-223a does not allow defendant to impose a Federal Tax consolidated return rule on a taxpayer filing a combined return. Since the Commissioner applied his power under section12-226a to disallow the deductions, it cannot be assumed that CT Page 3286 he was imposing the federal tax consolidated return rule on plaintiff just because it has similar effects and rationale to the application of section 12-226a in this situation. Therefore, this argument is not properly before the court.
Lastly, plaintiff argues that if the court finds that the Federal Tax consolidated return rules on deferral of gain and loss apply, deferred gains should be excluded from plaintiff's tax liability. This argument need not be considered because this court is not applying the Federal Tax consolidated return rules.
This appeal is sustained in part and dismissed in part. This appeal is sustained on the issues regarding the Commissioner's adjustment of CGC's tax liability for the 1981 income year and the Commissioner's disallowance of CGFCIC's operating loss for its 1980 and 1981 income years. This appeal is dismissed on the issue of the Commissioner's disallowance of CGC's loss on the sale of securities to Aetna for the 1981 income year.
Because the plaintiff paid the full amount of the tax assessed plus interest thereon by payment made under protest on August 20, 1987, which is admitted by the defendant — see paragraph 5 of complaint and paragraph 1 of answer, the plaintiff is entitled to a payment from the treasurer in the amount of nine percent interest per annum on the part of the appeal which has been sustained.
JOSEPH B. CLARK, J.