SCHLUMBERGER TECHNOLOGY CORPORATION *v.* OREST T. DUBNO, COMMISSIONER OF REVENUE SERVICES (12728)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued December 2, 1986—decision released March 3, 1987

*Richard K. Greenberg,* assistant attorney general, with whom were *Anne M. Dufour,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, for the appellant-appellee (defendant).

*Maurice T. FitzMaurice,* with whom, on the brief, were *John M. Horak* and *Lawrence H. Lissitzyn,* for the appellee-appellant (plaintiff).

PETERS, C. J. This case involves a dispute about the proper measure of a multistate corporation's liability for the Connecticut corporation business tax. The plaintiff, Schlumberger Technology Corporation, appealed to the Superior Court, pursuant to General Statutes § 12-237,[1] from a decision of the defendant commissioner

---

[1] "[General Statutes] Sec. 12-237. APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under the provisions of this part may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer

of revenue services determining that the plaintiff's taxable income should be apportioned to Connecticut in accordance with the provisions of General Statutes § 12-218 (b).[2] The trial court sustained the plaintiff's appeal, and remanded the case to the defendant for further proceedings. From this judgment, the defendant has filed an appeal and the plaintiff a cross appeal. Because we conclude that the defendant was correct in his initial departmental determination of the plaintiff's tax liability, we find error on the defendant's appeal and no error on the plaintiff's cross appeal.

to pay the amount of such relief, with interest at the rate of six per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which may be denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

[2] "[General Statutes] Sec. 12-218. APPORTIONMENT OF NET INCOME. Any taxpayer which is taxable both within and without this state shall apportion its net income as provided in this section. For purposes of apportionment of income under this section, a taxpayer is taxable in another state if in such state such taxpayer conducts business and is subject to a net income tax, a franchise tax for the privilege of doing business, or a corporate stock tax, of if such state has jurisdiction to subject such taxpayer to such a tax, regardless of whether such state does, in fact, impose such a tax. The net income of the taxpayer shall be apportioned as follows: (a) Such income, when derived from business other than the manufacture, sale or use of tangible personal or real property, shall be apportioned within and without the state by means of an apportionment fraction, the numerator of which shall represent the gross receipts from business carried on within Connecticut and the denominator shall represent the gross receipts from business carried on everywhere, except that any gross receipts attributable to an international banking facility, as defined in section 12-217, shall not be included in the numerator or the denominator; (b) when derived from the manufacture, sale or use of tangible personal or real property, the portion thereof attributable to business within the state shall be determined by means of an apportionment fraction to be computed as the sum of the property factor, the payroll factor and twice the receipts factor, divided by four. . . ."

Although the apportionment formula of § 12-218 (b) was amended in 1981; Public Acts 1981, No. 81-411, § 2; the parties are agreed that this change does not alter their respective arguments in the present controversy.

The Connecticut corporation business tax; General Statutes § 12-213 et seq.; is a tax upon the franchise of corporations, whether they be domestic or foreign, "for the privilege of carrying on or doing business, owning or leasing property within the state in a corporate capacity . . . ." General Statutes § 12-214; *Connecticut Bank & Trust Co.* v. *Tax Commissioner,* 178 Conn. 243, 247, 423 A.2d 883 (1979); *Spector Motor Service, Inc.* v. *Walsh,* 135 Conn. 37, 56, 61 A.2d 89 (1948); *Stanley Works* v. *Hackett,* 122 Conn. 547, 551, 190 A. 743 (1937); *Underwood Typewriter Co.* v. *Chamberlain,* 94 Conn. 47, 55, 108 A. 154 (1919), aff'd, 254 U.S. 113, 41 S. Ct. 45, 65 L. Ed. 165 (1920). It is a franchise tax "measured by the entire net income . . . received by such corporation . . . from business transacted within the state during the income year . . . ." General Statutes § 12-214; *Connecticut Bank & Trust Co.* v. *Tax Commissioner,* supra.

For a multistate corporation that is taxable "both within and without this state," the Connecticut corporate business tax is calculated by taxing the corporation, at current rates, upon the fraction of its entire net income that is apportioned to Connecticut in accordance with one of the formulae set out in General Statutes § 12-218. The choice of the appropriate apportionment formula depends, under § 12-218, on the nature of the taxpayer's business. Only two of these formulae have any possible bearing on the business of the plaintiff taxpayer in this case.[3] The differentiating factor between these two formulae is whether the taxpayer's income is, or is not, derived from the manufacture, sale or use of tangible personal or real property. The net income of a § 12-218 (a) taxpayer, whose income is "derived from business other than the manufacture, sale or use of tangible personal or real property," is apportioned

---

[3] The third formula, contained in General Statutes § 12-218 (c), pertains only to motor bus companies.

according to a one factor formula comparing the taxpayer's Connecticut gross receipts with his gross receipts "from business carried on everywhere." By contrast, the net income of a § 12-218 (b) taxpayer, whose income is "derived from the manufacture, sale or use of tangible personal or real property," is apportioned by a three factor formula taking into account not only gross receipts but also property and payroll in this state and elsewhere. A corporate taxpayer who objects that the § 12-218 method of apportionment attributes to this state "an undue portion of its net income" may file with its tax return a request that the commissioner of revenue services accept an alternate measure of apportionment. General Statutes § 12-221a;[4] *B.F. Goodrich Co.* v. *Sullivan,* 26 Conn. Sup. 373, 376–77, 224 A.2d 754 (1966). The principal issue in this case is whether the plaintiff's net income should be apportioned to Connecticut in accordance

---

[4] "[General Statutes] Sec. 12-221a. PETITION FOR ALTERNATE METHOD OF APPORTIONMENT. If the method of apportionment prescribed in sections 12-218, 12-218a and 12-219a, as administered by the commissioner of revenue services and applied to the business of any company, unfairly attributes to this state an undue proportion of its net income or additional tax base, such company may petition for an alternate method of apportionment by filing with its return to the commissioner a statement of its objections and of such other proposed method of apportionment as it believes proper and equitable under the circumstances, accompanied by supporting details and proofs. The commissioner, within a reasonable time thereafter, shall notify the company whether the proposed method is accepted as reasonable and equitable and, if so accepted, shall adjust the return and tax accordingly. With respect to any company subject to the tax imposed under this chapter, the commissioner, at any time within three years after the due date for the filing of such return, or in the case of a completed return filed after such due date, within three years after the date on which such return was received by the commissioner, which return is based on the method of apportionment provided for in said sections 12-218, 12-218a and 12-219a, may change such method if, in his opinion, such method has operated or will operate so as to subject the company to taxation on a lesser portion of its net income or additional tax base than is equitably attributable to this state and shall thereupon proceed to assess and collect taxes in accordance with such method as so changed by him."

with the one factor formula of § 12-218 (a) or the three factor formula of § 12-218 (b).[5]

The plaintiff, a wholly owned subsidiary of Schlumberger, Ltd., a Netherlands Antilles corporation, is a Texas corporation qualified to do business in forty-three states, including Connecticut. Nationwide, the plaintiff's business activity is twofold: it derives about 70 percent of its annual gross receipts from providing wireline services to the oil and gas industry, and about 30 percent of its gross receipts from the manufacture and sale of equipment and supplies, principally to other subsidiaries of Schlumberger, Ltd. In Ridgefield, Connecticut, the plaintiff operates a facility that conducts basic research for the development of wireline services technology.

In all the years in which the plaintiff has done business in Connecticut, it has calculated the amount of income apportionable to Connecticut for the purposes of the Connecticut corporation business tax in accordance with the formula set forth in § 12-218 (b). Pursuant to § 12-221a, the plaintiff filed petitions for an alternative method of apportionment with its tax returns for the years 1977 through 1982. Alleging that the statu-

---

[5] Overall, Connecticut's statutes for the apportionment of the income of multistate corporations resemble in broad outline the statutory pattern of corporate income taxes in other states, including those that have adopted the Uniform Division of Income for Tax Purposes Act. See generally 1 J. Hellerstein, State Taxation (1983) c. 9. Only Connecticut, however, uses allocation formulae which turn on whether a taxpayer does or does not derive income from the manufacture, sale or use of tangible property. The plaintiff has raised no question about the constitutionality of our statutory criteria for apportionment, which comply on their face with the requirements of the due process and the commerce clauses of the United States constitution. U.S. Const., art. I, § 8, cl. 3, and amend. V; *Container Corporation of America* v. *Franchise Tax Board,* 468 U.S. 159, 164, 103 S. Ct. 2933, 77 L. Ed. 2d 545 (1983); *Mobil Oil Corporation* v. *Commissioner of Taxes,* 445 U.S. 425, 436–37, 100 S. Ct. 1223, 63 L. Ed. 2d 510 (1980); *Moorman Mfg. Co.* v. *Bair,* 437 U.S. 267, 272–73, 277, 98 S. Ct. 2340, 57 L. Ed. 2d 197 (1978).

tory method of apportionment under § 12-218 (b) unfairly attributed an undue portion of its income to Connecticut, the plaintiff petitioned for an alternate, hybrid method of apportionment. It proposed that the 70 percent of its annual gross receipts derived from its wireline services be apportioned to Connecticut according to the one factor formula of § 12-218 (a), and that the remaining 30 percent of its gross receipts, attributable to its manufacture and sale of personal property, be apportioned according to the three factor formula of § 12-218 (b).

In the spring of 1981, the defendant notified the plaintiff that its petitions for this alternate method of apportionment had been denied. In the administrative proceedings that ensued, the plaintiff urged the defendant to interpret § 12-218 to place income from its wireline services within subsection (a) rather than within subsection (b). The defendant determined, however, after a hearing held pursuant to General Statutes § 12-236,[6] that such income was derived from the use of tangible property, and hence was fairly appor-

---

[6] "[General Statutes] Sec. 12-236. HEARING BY COMMISSIONER. Any taxpayer, aggrieved by the action of the commissioner or his authorized agent in fixing the amount of any tax, penalty or interest provided for by this part, may apply to the commissioner, in writing, within thirty days after the notice of such action is delivered or mailed to it, for a hearing and a correction of the amount of the tax, penalty or interest so fixed, setting forth the reasons why such hearing should be granted and the amount in which such tax, penalty or interest should be reduced. The commissioner shall promptly consider each such application and may grant or deny the hearing requested. If the hearing is denied, the applicant shall be notified thereof forthwith. If it is granted, the commissioner shall notify the applicant of the time and place fixed for such hearing. After such hearing the commissioner may make such order in the premises as appears to him just and lawful and shall furnish a copy of such order to the applicant. The commissioner may, by notice in writing, at any time within three years after the date when any return of any taxpayer has been due, order a hearing on his own initiative and require the taxpayer or any other individual whom he believes to be in possession of relevant information concerning the taxpayer to appear before him or his authorized agent with any specified books of accounts, papers or other documents, for examination under oath."

tionable to Connecticut in accordance with the three factor formula of § 12-218 (b). The defendant's decision did not address the question whether § 12-218 authorized the use of a hybrid method of apportionment.

The plaintiff thereafter took a timely appeal to the trial court pursuant to General Statutes § 12-237. As in the earlier administrative proceedings before the defendant, the plaintiff argued for a hybrid method of apportionment to permit the plaintiff to use the § 12-218 (a) apportionment formula for its wireline services and the § 12-218 (b) apportionment formula for its manufacture and sale of personal property. In two separate counts of its complaint, the plaintiff claimed that such a result was warranted either as: (1) a proper construction of the text of § 12-218; or (2) an equitable alternative to § 12-218 whose denial was an abuse of the defendant's discretion under § 12-221a.[7]

The trial court sustained the plaintiff's appeal, concluding that the income from the plaintiff's wireline services fell within the ambit of § 12-218 (a). Without determining what relief might "be equitable," as § 12-237 permits, the court remanded the case to the defendant "for the purpose of making a fair apportionment in the light of this decision." In its memorandum of decision, the court explained that, pursuant to its § 12-221a authority, the defendant might either determine that all of the plaintiff's net income should be apportioned according to the one factor formula of § 12-218 (a), or that the 70 percent/30 percent manner of apportionment originally requested in the plaintiff's petitions was the proper and equitable measure of its Connecticut tax liability.

Both parties have appealed from the judgment of the trial court. The defendant urges us to uphold its admin-

---

[7] The plaintiff's complaint also had a third count concerning the allocation of gains and losses relating to abandoned well site equipment. The trial court did not address that issue, and it is not before us on this appeal.

istrative ruling that the plaintiff does not qualify for § 12-218 (a) apportionment. The plaintiff's cross appeal urges us to hold that, since 70 percent of its income is apportionable under § 12-218 (a), its entire income is eligible for such an apportionment as a matter of law, thus obviating an administrative remand.

Before we can reach the merits of these competing claims about the construction of § 12-218 in the circumstances of this case, we must resolve a preliminary disagreement concerning the scope of our review of these claims. The plaintiff argues for the applicability of the principle that questions of the propriety of the imposition of a tax must be resolved in favor of the taxpayer. *The B.F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 6, 490 A.2d 991 (1985); *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 154, 285 A.2d 352 (1971). The defendant maintains, to the contrary, that, because the plaintiff sought discretionary relief under § 12-221a, its claim comes under the rule that deductions and exemptions from otherwise taxable income are considered a matter of legislative grace and are thus strictly construed against the taxpayer. *Commissioner* v. *Sullivan,* 356 U.S. 27, 28, 78 S. Ct. 512, 2 L. Ed. 2d 559 (1958); *The B.F. Goodrich Co.* v. *Dubno,* supra, 8–9; *Yaeger* v. *Dubno,* 188 Conn. 206, 212, 449 A.2d 144 (1982).

The plaintiff acknowledges, as it must, that its administrative petitions were framed as requests for discretionary consideration of an alternative method of tax apportionment. That administrative posture is not significant, according to the plaintiff, for three reasons. First, administrative regulations contained in instructions on the corporation business tax return require taxpayers who have any income whatsoever derived from the manufacture, sale or use of tangible property to file their tax returns using the § 12-218 (b) formula. Second, there is no statute other than § 12-221a on which a taxpayer can rely to challenge the applicabil-

ity of the § 12-218 (b) formula to its business. Third, the plaintiff's § 12-221a petitions, in asking for a hybrid apportionment formula, were seeking an interpretation of its existing statutory rights under § 12-218 rather than the discretionary displacement of § 12-218 by an alternative formula. In the context of the trial court proceedings in this case, we agree with the plaintiff that its appeal was not limited to a review of the defendant's alleged abuse of discretion.

The plaintiff's appeal to the trial court was taken, not under the Uniform Administrative Procedure Act, which excludes tax appeals; General Statutes § 4-186; but under § 12-237. As the trial court held, in a ruling which the defendant's appeal does not challenge, a tax appeal pursuant to § 12-237 affords a taxpayer a trial de novo. See Practice Book § 3088 (b) (now § 4095 [b]); *Xerox Corporation* v. *Board of Tax Review,* 175 Conn. 301, 303, 397 A.2d 1367 (1978); *Yale University* v. *New Haven,* 169 Conn. 454, 465, 363 A.2d 1108 (1975); *O'Brien* v. *Board of Tax Review,* 169 Conn. 129, 130–31, 362 A.2d 914 (1975). In that trial de novo, the plaintiff asked the trial court, in the first count of its complaint, to determine, as a matter of statutory construction, whether the nature of the plaintiff's wireline services entitled it to apportion 70 percent of its income to Connecticut in accordance with the one factor formula of § 12-218 (a). The plaintiff itself apparently recognized that this aspect of its complaint did not entirely track the discretionary nature of the petitions that it had filed at the administrative level, because the plaintiff's second count addressed an alleged abuse of administrative discretion. Whether the plaintiff's enlargement of the administrative scope of reference was proper is an issue that we need not decide. If indeed it was an enlargement, the record before us gives no indication that the defendant challenged the procedural propriety of the first count in the trial court, and no such claim of pro-

cedural impropriety has been made in the defendant's present appeal to this court. The trial court's memorandum of decision makes it entirely clear that the court in fact undertook to interpret § 12-218 rather than to inquire into the allegation of abuse of administrative discretion on the part of the defendant. Vested with full power, under § 12-237, to "grant such relief as may be equitable," the trial court in this case certainly had plenary authority to adjudicate the statutory merits of the plaintiff's claim.[8] Our review of the judgment of the trial court must be on similar terms.

We note, further, that the defendant has suggested no avenue, other than the one taken in this case, by which a taxpayer can challenge a regulatory interpretation of § 12-218 with which the taxpayer disagrees. Under § 12-237, a taxpayer may not seek judicial relief without having first sought a ruling from the defendant commissioner. The defendant has issued, so far as this record discloses, no regulations permitting a taxpayer to contest its § 12-218 liability other than by recourse to § 12-221a, and no statute other than § 12-221a is, on its face, applicable. This court has repeatedly insisted that a taxpayer wishing to contest the legality of its tax assessments must follow prescribed statutory procedures. *Norwich* v. *Lebanon,* 200 Conn. 697, 708–12, 513 A.2d 77 (1986); *Hartford* v. *Faith Center, Inc.,* 196 Conn. 487, 490–92, 493 A.2d 883 (1985); *National CSS, Inc.* v. *Stamford,* 195 Conn. 587, 597–98, 489 A.2d 1034 (1985).

---

[8] The judgment of the trial court was final, for the purposes of an appeal to this court, despite its order of remand, because the court had plenary authority under General Statutes § 12-237 fully to adjudicate all of the issues raised by the plaintiff's complaint. For this reason, this case is distinguishable from recent cases such as *Schieffelin & Co.* v. *Deptartment of Liquor Control* 202 Conn. 405, 521 A.2d 566 (1987), and *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities,* 202 Conn. 150, 154–57, 520 A.2d 186 (1987).

We therefore conclude that the choice of a proper apportionment formula in this case is a question of the statutory construction of § 12-218 in which the plaintiff taxpayer is entitled, if the statute is ambiguous, to a construction in its favor. We agree with the trial court, furthermore, that the construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference. *Board of Education* v. *Board of Labor Relations*, 201 Conn. 685, 698–99, 519 A.2d 41 (1986); *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 342–43, 435 A.2d 353 (1980); *Real Estate Listing Service, Inc.* v. *Real Estate Commission,* 179 Conn. 128, 138–39, 425 A.2d 581 (1979). Bearing these principles in mind, we now turn to the merits of the present appeal and cross appeal.

The dispositive issue of statutory construction is whether the trial court erred in concluding that the income that the plaintiff earns in the 70 percent of its business that consists of wireline services is income defined by § 12-218 (a) as "derived from business *other than* the manufacture, sale or use of tangible personal or real property." (Emphasis added.) The parties now agree that the proper characterization of the income attributable to the plaintiff's wireline services determines how the plaintiff's entire net income is to be apportioned to this state. See Regs., Conn. State Agencies, Department of Revenue Services, § 12-218-2 (b).[9]

---

[9] Section 12-218-2 of the Regulations of Connecticut State Agencies, Department of Revenue Services, effective July 21, 1982, provides: "DERIVATION OF INCOME OR LOSS. (a) Whether or not the net income or loss of a company is derived from the manufacture, sale or use of tangible personal or real property shall be determined by examining its business wherever carried on and not just by examining its business carried on within this state.

"(b) The primary derivation of net income or loss shall be controlling. If the net income or loss of a company is primarily derived from the manufac-

If income from wireline services should be apportioned to Connecticut in accordance with the three factor formula of § 12-218 (b), then the defendant will prevail in his appeal; if, to the contrary, income from these services falls within the one factor formula of § 12-218 (a), then the plaintiff will prevail in its cross appeal. Although a hybrid formula might pass muster as an alternate apportionment method, subject to discretionary approval under § 12-221a, no such issue is presented by this appeal.

The plaintiff's wireline services provide its customers in the oil and gas industry with information and advice about the economic viability of drilling sites. The trial court's memorandum of decision describes these services as follows: "Wireline services are performed by plaintiff's engineers lowering a specially designed sensoring instrument on an armored electrical cable, called a wireline, down a hole, drilled in a location where oil or gas is suspected, to various depths to measure geological characteristics, such as density, and fluid, mineral and chemical contents of rock formations. The measurements are transmitted, via the wireline, to a mobile laboratory, located at the well site, where they are recorded on a magnetic tape and on a graph. The data has little significance, except as it is analyzed by plaintiff's engineers, who apply to it mathematical formulae and ultimately determine whether or not the location contains oil or gas in amounts feasible to produce. Plaintiff's customers pay plaintiff for this advice about their sites."

The trial court determined that the test for determining whether income was, or was not, "derived from

---

ture, sale or use of tangible personal or real property and only secondarily derived from an activity not involving the manufacture, sale or use of tangible personal or real property, the net income or loss of such company shall be deemed to be derived from the manufacture, sale or use of tangible personal or real property."

the manufacture, sale or use of tangible personal or real property" was to inquire into the nature of the taxpayer's business. A mercantile or manufacturing company, on this analysis, would be governed by the three factor apportionment formula of § 12-218 (b), while a service company would be governed by the one factor formula of § 12-218 (a). Such a result followed, the court reasoned, because the legislature could not have intended the phrase "use of tangible . . . property" in § 12-218 to be taken literally, when a literal reading would disqualify every modern enterprise that employs tangible property such as typewriters, word processors, copying machines, computers and telephones in the course of its business operations. The court noted that a 1933 commission study concerning a legislative precursor of § 12-218 had described the one factor apportionment formula as applicable "largely to miscellaneous financial and service corporations." See Report of Connecticut Temporary Commission to Study the Tax Laws of the State and to Make Recommendations Concerning their Revision (1934). It also found persuasive a similar characterization in J. McNeil & A. Hunt, Connecticut Taxation of Corporations (3d Ed. 1970) p. 43. Finally, the court noted that, according to the defendant's past practice, service businesses such as multistate stock brokerage and business consulting firms had been permitted to file § 12-218 (a) returns. Considering the plaintiff's wireline services to be analogous to the business operations of brokers and business consultants, the court determined that the plaintiff's services qualified for § 12-218 (a) treatment.

The crucial question raised by this analysis is whether it is accurate to say that the wording of § 12-218 (a), i.e., "income derived from business other than the . . . use of tangible personal . . . property" is a surrogate for "income derived from a service business." The defendant maintains that the trial court's interpreta-

tion finds no support in the language of § 12-218. The proper reading, he urges, is to distinguish between businesses in which the use of tangible property is inconsequential, whose income is to be apportioned according to § 12-218 (a), and businesses in which the use of tangible property is essential, whose income is to be apportioned according to § 12-218 (b). Acknowledging that this language is not itself unambiguous and therefore must be strictly construed against the defendant, we nonetheless agree with the defendant that a test that looks to the particular characteristics of an individual taxpayer more appropriately captures the intent of § 12-218 than one that generalizes about the usual characteristics of mercantile, manufacturing or service enterprises. If indeed few modern businesses today operate without relying on the use of tangible property as an essential part of their businesses, and the class of § 12-218 (a) taxpayers is shrinking, it is for the legislature, and not for the courts, to decide whether the reach of the three factor formula of § 12-218 (b) has become too all inclusive.[10]

Our final task then is to determine, from the undisputed facts at trial, whether the use of tangible property was an essential or an inconsequential aspect of the plaintiff's wireline services income. In support of its position that personal property was extensively used by the plaintiff, the defendant points to the testimony of David Sims, an engineer, wireline coordinator, and

---

[10] Courts in other jurisdictions have resisted attempts by both taxpayers and taxing authorities to avoid three factor apportionment of multistate business income. See, e.g., *Roger Dean Enterprises, Inc.* v. *State Department of Revenue,* 387 So. 2d 358, 363 (Fla. 1980); *St. Johnsbury Trucking Co.* v. *State,* 118 N.H. 209, 212, 385 A.2d 215 (1978). Under § 9 of the Uniform Division of Income for Tax Purposes Act, the basic apportionment formula is a three factor fraction that takes into account the taxpayer's property, payroll and sales. Only if that formula does not fairly represent the extent of the taxpayer's activity in the taxing state may the taxpayer, under § 18, petition for an alternate method of apportionment.

corporate official of the plaintiff. Sims described the process by which the plaintiff collects data at the well site as involving the use of complicated and sophisticated equipment that the plaintiff has developed for this purpose. Without this sophisticated equipment, Sims testified, the plaintiff would not be in business. In its well site operations, the plaintiff relies to a great extent on mechanical or electrical engineers rather than on geologists. This record, according to the defendant, distinguishes the plaintiff's use of property from those of other firms that rely on personal property for the recording and analysis of data and demonstrates that the use of tangible property is essential to the plaintiff's business.

Without contesting the factual accuracy of this description of the operation of its wireline services, the plaintiff urges us to look, as a matter of law, to the standard for an inconsequential use of tangible property that we employed in *Columbia Pictures Industries, Inc.* v. *Tax Commissioner,* 176 Conn. 604, 410 A.2d 457 (1979). That case involved the applicability of the state sales and use tax; General Statutes § 12-406 et seq.; to the rental of a commercial motion picture film by a national distributor to a local exhibitor. The plaintiffs there argued that the rental was exempt from taxation under General Statutes § 12-412 (k) which provided an exemption for "personal services transactions . . . which involve sales as inconsequential elements for which no separate charges are made." *Columbia Pictures Industries, Inc.* v. *Tax Commissioner,* supra, 610. In construing that statute, we concluded that the question was whether consequential services were entwined with tangible personal property. Id., 612. We resolved that question against the taxpayer by invoking a standard of "whether the buyer intended to buy an individual's skills or a tangible end product of those skills." Id.

As the plaintiff points out, the trial court relied on a standard similar to that of *Columbia Pictures* in arriving at its conclusion about the nature of the plaintiff's business. In its memorandum of decision, the court stated: "Although plaintiff uses sophisticated instruments at specific locations what it sells and what its clients pay for is plaintiff's opinion on whether or not there is sufficient oil or gas on clients' sites to warrant full scale production." Although we have no reason to doubt the validity of this description, we are not persuaded that the *Columbia Pictures* standard accurately measures the plaintiff's liability when the question is apportionment of income under the terms of § 12-218.

The taxable transactions that are addressed by the sales tax exemption under § 12-412 (k) and the apportionment formulae under § 12-218 are different. The sales tax exemption involves a contractual transfer of property between two persons that necessarily implicates their mutual expectations. The apportionment of taxes to measure the taxable presence of a multistate corporation in this state is, however, governed by the taxpayer's own use of property, and has nothing to do with the expectations of the taxpayer's clients. We agree with the defendant, therefore, that the *Columbia Pictures* test is not an appropriate measure of whether the plaintiff's use of property is inconsequential for the purposes of § 12-218.

We conclude that the defendant has in fact established that the plaintiff's operation of its wireline services involves tangible personal property as an essential part of the plaintiff's business. The relevant evidence is that the plaintiff relies on its own sophisticated and specially designed equipment not only at its on-site mobile laboratory, where wireline measurements are recorded and analyzed, but also in the very process of collecting the underlying data on which the analyses depend. In these circumstances, we hold that, because

the plaintiff's net income is "derived from the . . . use of tangible . . . property," that income is properly to be apportioned to this state in accordance with the three factor formula of § 12-218 (b).

There is error, the judgment of the trial court is set aside and the case is remanded with direction to dismiss the plaintiff's appeal.

In this opinion the other justices concurred.