[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by plaintiff taken pursuant to section12-237 of the General Statutes contesting a decision of the defendant Commissioner of Revenue Services of the State of Connecticut ("Commissioner") denying a refund for income years 1983, 1984, and 1985 in the amounts of $17,907.00, $17,657.00 and $58,876.00 respectively, for a total amount of $94,440.00, and interest, which plaintiff claims is owed to it because its tax liability should have been apportioned for such years. Plaintiff has filed an amended Connecticut Business Tax Return reflecting his belated claims of apportionment.
The following is a summary of the facts that are contained in a stipulation of facts filed with the court.
The plaintiff Altray Company, Inc. is a New York corporation with its principal place of business in Greenwich, Connecticut. The plaintiff's income year ends on January 31 each year.
In the income years ended January 31, 1983, January 31, 1984 and January 31, 1985 ("the Audit Period") plaintiff was engaged in the import business and acted exclusively as the purchasing agent for R.L. Albert Son, Inc. ("Albert"). Plaintiff arranged purchases of candy and confectionary products from foreign vendors.
Albert purchases and resells the imported candies and confectioneries. During the Audit Period plaintiff's president held numerous, repeated and regular meetings with its suppliers at his apartment in New York, New York. (Although the defendant agrees to the foregoing, there is no documentary evidence in the exhibits which supports that claim. There are exhibits ostensibly showing such meetings in two years subsequent to the CT Page 9809 Audit Period, i.e. 1985 and 1986. The stipulation of facts indicates that those recent non-audit years "are representative of meetings held by the president of plaintiff with suppliers during the Audit Period." The court will not speculate as to why records such as "business" meetings were only kept after the Audit Period. Nevertheless, the court notes that the "numerous, repeated and regular meetings" consist of approximately three meetings per month. If meetings with the graphics artist are deleted the "numerous, repeated and regular meetings" would average two per month. It is also significant that all of these meetings took place at the residential apartment of the president of the plaintiff.) All of these meetings were ostensibly held for the convenience of plaintiff's suppliers and prospective suppliers. During many of these meetings plaintiff placed orders with suppliers.
Plaintiff sold property to Albert during the Audit Period. This property was shipped from plaintiff's suppliers located outside of Connecticut and delivered directly to Albert at warehouses in California, Florida, Illinois, Louisiana, Michigan, Minnesota, Missouri, New Jersey, Texas, Utah and Washington at the direction of Albert. During the Audit Period plaintiff maintained no inventory in Connecticut.
Plaintiff filed Connecticut Corporation Business Tax Returns for the Audit Period and paid the tax due thereon. Plaintiff is a New York corporation and therefore subject to the New York State Corporation Franchise Tax, which it paid for each year in the Audit Period. This tax paid was the statutory minimum tax for the Audit Period because plaintiff had no net income allocated to New York for purposes of the New York Corporation Franchise Tax for the Audit years. In other words, it had no property, payroll or sales receipts attributable to New York.
Plaintiff does not claim to have been subject to a net income tax, a franchise tax for the privilege of doing business, or a corporate stock tax in any state other than Connecticut and New York. Plaintiff does not claim to have conducted business in any state other than Connecticut and New York during the Audit Period. The plaintiff did not apportion its income within and without the State of Connecticut pursuant to section 12-218 of the General Statutes.
On March 14, 1986 plaintiff's accountant sent a letter to the Legal Division of defendant asking advice regarding the apportionment of sales made by an importing corporation which is incorporated in New York but has offices in Connecticut. That letter asked a hypothetical question and did not reference the plaintiff or any specific corporate entity. CT Page 9810 Nor did it include any factual terms that relate to the present claim that the president of plaintiff was doing business in New York based upon the aforementioned meetings at his apartment in New York City.
In a letter dated March 17, 1986, Richard J. Honore, defendant's employee responded by advising as to the treatment of sales under section 12-218 of the General Statutes.
On April 14, 1986, pursuant to section 12-225 plaintiff filed an amended Connecticut Corporation Business Tax Return for income years 1983, 1984, and 1985 apportioning its income within and without the State of Connecticut pursuant to section 12-218. Plaintiff recalculated its Connecticut Corporation Business Tax and requested a refund for such years in the amounts of $17,907.00 for 1983, $17,657.00 for 1984, and $58,876.00 for a total amount of $94,440.00 with interest. Defendant denied plaintiff's amended tax returns by letter dated February 13, 1987. By letter dated February 25, 1987, pursuant to section 12-236, plaintiff protested defendant's denial and requested a hearing. A hearing was held on April 16, 1987 at defendant's office. By letter dated May 27, 1987, defendant issued a final determination and order denying plaintiff's protest. On June 26, 1987, plaintiff filed this complaint in the superior court appealing from the order, decision, determination or disallowance pursuant to section 12-236.
Section 12-127 of the General Statutes allows "[a]ny taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services . . . [to] take an appeal therefrom to the superior court." The Department of Revenue Services states in its letter, denying plaintiff the right to apportion its taxes, from P.A. Barbato, Deputy Commissioner of Revenue Services, that: "This constitutes an order, decision, determination or disallowance as those terms are used in section 12-237 of the Connecticut General Statutes."
"[T]he party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole . . . [T]he party claiming aggrievement must establish that this specific, personal and legal interest has been specially and injuriously affected by the decision." Primerica v. Planning 
Zoning Commission, 211 Conn. 85, 92-3, 558 A.2d 646 (1989).
The plaintiff maintains that it is entitled to a refund based on section 12-218, apportionment of taxes. The defendant denied plaintiff's request for a refund. The plaintiff CT Page 9811 has a specific, personal and legal interest in the defendant's decision. The plaintiff brings this appeal to the superior court pursuant to section 12-237. The court finds that the plaintiff is aggrieved by the Commissioner's decision denying plaintiff's amended tax returns for Connecticut Corporation Business Tax. Therefore the plaintiff has standing to bring this appeal.
Section 12-237 of the General Statutes permits an aggrieved party taking an appeal from a decision of the Commissioner to do so by filing an appeal in the superior court within one month after service upon the taxpayer of such decision.
In this case, the Commissioner sent plaintiff a final determination, dated May 27, 1987 (Stipulation of Facts, Exhibit H) and plaintiff filed this appeal in the superior court on June 26, 1987, within the one month requirement. Therefore, this appeal is timely filed.
"The plaintiff's appeal to the trial court was taken, not under the Uniform Administrative Procedure Act, which excludes tax appeals; section 4-186 of the General Statutes; but under section 12-237."' Schlumberger Technology Corporation v. Dubno, 202 Conn. 412, 421, 521 A.2d 569 (1987). A tax appeal pursuant to section 12-237 affords a taxpayer a trial de novo. Id.
Section 12-218 states in pertinent part:
 Any taxpayer which is taxable both within and without this state shall apportion its net income . . . For purposes of apportionment of income under this section, a taxpayer is taxable in another state if in such state taxpayer conducts business and is subject to . . . franchise tax for the privilege of doing business . . . .
Section 12-218 (emphasis added).
To determine whether the plaintiff is entitled to apportion its income for the purpose of Connecticut Corporation Business Tax the court must first decide whether plaintiff conducted business in New York during the Audit Period.
The plaintiff contends that it has met the two requirements under section 12-218: (1) it conducts business in Connecticut because its principal office is in Greenwich, Connecticut and (2) it is subject to a franchise tax in New York [and paid the statutory minimum]. CT Page 9812
The defendant counters that the plaintiff did not "conduct business" in New York during the Audit Period and therefore is not entitled to apportion its income. The defendant claims that the plaintiff only paid the statutory minimum franchise tax to New York because it had no property, payroll or sales receipt attributable to New York and therefore the plaintiff did not "conduct business" in New York. The defendant further maintains that the "conducts business" requirement of section 12-218 is coextensive with the "carrying on" business portion of Conn. Dept. Reg. section 12-214-1 (a) only, not section12-214-1 (b) as the plaintiff argues. The court agrees with the defendant. Section 12-214-1(b) is inapplicable to this case.
"In determining whether a corporation is doing business in the state so as to subject itself to taxation, it is essential to first examine the statute for any definition of what constitutes `doing business.' In Connecticut there is no statutory definition of `doing business.' The meaning is, thus, left largely to administrative and judicial construction." Conn. Tax Reports (CCH) section 2-012.
Section 12-213 of the General Statutes states that "`carrying on or doing business' means and includes each and every act, power or privilege exercised or enjoyed in this state, as an incident to, or by virtue of, the powers and privileges acquired by the nature of any organization whether the form of existence is corporation, associate, joint stock company or fiduciary. . . ."
The general rule when interpreting a tax statute is that when "[a] statute that provides an exemption from taxation must be strictly construed in favor of the taxing authority and against the taxpayer." Clinton Nurseries, Inc. v. Commissioner of Revenue Services, 205 Conn. 761d, 765 (1988). Furthermore, "considerable deference [is given] to the commissioner's interpretation of taxation statutes and regulations." Id. (Citations omitted.).
The facts are that the president of the plaintiff has a residential apartment in New York City. On two or three days per month he met with suppliers and prospective suppliers in that apartment. During many of those two or three days per month meetings he placed orders with those suppliers. During the Audit Period the plaintiff paid only the minimum New York taxes of a few hundred dollars while paying Connecticut hundreds of thousands of dollars in taxes. The plaintiff appears to have no property, payroll or sales receipts attributable to New York. The court must conclude on these facts and upon their non-compliance with the tax indicia of doing business which appear in Conn. Dept. Reg. section 12-214-1(a), that the plaintiff CT Page 9813 was not doing business in New York and that it is therefore not entitled to apportion its income under section 12-218
of the General Statutes.
The plaintiff then argues in the alternative that if it is not conducting business in New York, the defendant should be estopped from disavowing the actions of its own agent (based on the letter dated March 17, 1986 stating: the sales factor of form 208A is based on destination sales. If the sales are destined outside Connecticut, that is where the [sic] are apportioned to. This is in accordance with section 12-218 of Chapter 208 /s/ Richard J. Honore). Plaintiff states that under these circumstances, where its claim for refund was made based on the defendant's advice, it would be inequitable to deny the plaintiff's refund. Therefore, the plaintiff asserts that the defendant should be estopped from doing so by taking a different position than that set forth in the March 17, 1986 letter and should be compelled to grant the plaintiff its refund.
The general rule is that "estoppel may not be invoked against a public agency in the exercise of its governmental functions." Kimberly-Clark Corporation v. Dubno, 204 Conn. 137,146, 527 A.2d 679 (1987) (citations omitted). However, an exception is made to the rule. "[Aln exception to this general rule is made where the party claiming estoppel would be subjected to a substantial loss if the public agency were permitted to negate the acts of its agents." Id. at 147.
 "`[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.' (Citations omitted)."
Id. at 148.
There are two elements necessary to prove estoppel (1) "the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must change its position in reliance on those facts, thereby incurring some injury." Id. at 148.
In this case the plaintiff's claims meet neither prong of the test.
As previously noted, the letter claimed to give rise to estoppel was merely written in response to a hypothetical CT Page 9814 letter of inquiry by a CPA who did not render all of the facts to the defendant's agent or even identify his client as being the plaintiff. The responsive letter rendered no opinion on the apportionment issue as raised by the facts of this case. This is clearly distinguishable from Kimberly-Clark Corporation v. Dubno, supra. By no stretch of rational thought did the defendant's agent say the plaintiff was entitled to apportionment. This is not surprising in view of the incomplete fact pattern given the agent and the non-disclosure of the plaintiff's identity. The defendant in no way calculated or intended to induce the plaintiff to believe he was entitled to apportionment and to act on that belief.
The second prong is not met because the plaintiff in no way changed his position in reliance. The defendant correctly notes that both the letter of inquiry and the response in question occurred after the Audit Period.
This appeal is, accordingly, dismissed.
By the court; CHARLES D. GILL, JUDGE, SUPERIOR COURT