FOODWAYS NATIONAL, INC. *v.* ALLAN A. CRYSTAL, COMMISSIONER OF REVENUE SERVICES
(15037)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued January 5—decision released February 28, 1995

*Richard W. Tomeo*, with whom was *Linda L. Morkan*, for the appellant (plaintiff).

*Richard K. Greenberg*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

PETERS, C. J. In this tax appeal, the dispositive issue is whether, pursuant to General Statutes (Rev. to 1993) § 12-218 (b),[1] a multistate corporation's pay-

---

[1] General Statutes (Rev. to 1993) § 12-218 provides in relevant part: "APPORTIONMENT OF NET INCOME. Any taxpayer which is taxable both within and without this state shall apportion its net income as provided in this section. . . . The net income of the taxpayer shall be apportioned as follows . . . (b) when derived from the manufacture, sale or use of tangible personal or real property, the portion thereof attributable to business within the state shall be determined by means of an apportionment fraction to be computed as the sum of the property factor, the payroll factor and twice the receipts factor, divided by four. The first of these fractions, the property factor, shall represent that part of the average monthly net book value of the total tangible property held and owned by the taxpayer during the income year which is held within the state, without deduction on account of any encumbrance thereon, and the value of tangible property rented to the taxpayer computed by multiplying the gross rents payable during the income year or period by eight. For the purpose of this section, gross rents shall be the actual sum of money or other consideration payable, directly or indirectly, by the taxpayer or for its benefit for the use or possession of the property, excluding royalties, but including interest, taxes, insurance, repairs or any other amount required to be paid by the terms of a lease or other arrangement . . . . The second fraction, the payroll factor, shall represent the part of the total wages, salaries and other compensation to employees paid by the taxpayer during the income year which was paid in this state . . . . The third fraction, the receipts

ments for warehouse space should be taken into account in determining the fraction of corporate net income apportioned to Connecticut. The plaintiff, Foodways National, Inc. (Foodways), appealed to the Superior Court, pursuant to General Statutes (Rev. to 1989) § 12-237,[2] from a decision of the defendant, Allan A. Crystal, the commissioner of revenue services (commissioner), in which the commissioner had assessed an additional corporate business tax against Foodways for

factor, shall represent the part of the taxpayer's gross receipts from sales or other sources during the income year, computed according to the method of accounting used in the computation of its entire net income, which is assignable to the state, and excluding any gross receipts attributable to an international banking facility as defined in section 12–217, but including receipts from sales of tangible property if the property is delivered or shipped to a purchaser within this state . . . receipts from services performed within the state, rentals and royalties from properties situated within the state, royalties from the use of patents or copyrights within the state, interest managed or controlled within the state, net gains from the sale or other disposition of intangible assets managed or controlled within the state, net gains from the sale or other disposition of tangible assets situated within the state and all other receipts earned within the state . . . ."

[2] General Statutes (Rev. to 1989) § 12-237 provides in relevant part: "APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under the provisions of this part may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. . . . Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of six per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which may be denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

A tax appeal pursuant to § 12-237 entitles a taxpayer to a trial de novo. See Practice Book § 4095 (b); *Kelly-Springfield Tire Co.* v. *Bajorski*, 228 Conn. 137, 141, 635 A.2d 771 (1993); *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services*, 202 Conn. 583, 588, 522 A.2d 771 (1987); *Schlumberger Technology Corp.* v. *Dubno*, 202 Conn. 412, 421, 521 A.2d 569 (1987).

the tax years 1985 and 1986. The trial court rendered judgment for the commissioner. Foodways then filed an appeal with the Appellate Court, which we transferred to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The parties stipulated to the relevant facts. Foodways is a multistate corporation that is incorporated in Delaware and has its principal place of business in Idaho. It is engaged in the business of processing and distributing prepared frozen food products throughout the country. It entered into contracts for warehouse space with public refrigerated warehouses around the country in order to preserve its products while making them available for distribution.[3]

The warehouse storage contracts did not afford Foodways control over any specific part of the warehouse premises but instead entitled it to a stated number of cubic feet of storage space. In return for Foodways' promise to maintain a certain average monthly level of inventory of its products in storage at the warehouse, the warehouse agreed to reserve the necessary floor space. Foodways paid a stated "rate" per gross hundredweight of the products that it had stored in the warehouse. In addition, Foodways paid the warehouse separate fees for handling, including a commitment by the warehouse to load rail cars and trucks in accordance with schedules provided by Foodways.

During the tax years 1985 and 1986, Foodways conducted sufficient business in Connecticut to be subject to the Connecticut corporation business tax. In filing

---

[3] Although the actual contracting party was an affiliated company, Ore-Ida Foods, Inc., that company's contracts were for the benefit of Foodways. The parties stipulated at trial that the identity of the contracting party is inconsequential in this case. For analytic simplicity, we therefore refer to Foodways as the party entering into the warehouse contracts and as the party paying the warehouse fees.

its tax returns, Foodways calculated the amount of its income to be allocated to Connecticut pursuant to § 12-218 (b) by including, as "gross rents," the amounts it had paid for warehouse fees but not the amounts it had paid for handling costs. The commissioner issued a corporate business tax assessment against Foodways, which, after Foodways' unsuccessful protest of the assessment, was found to be $124,199.26 plus interest of $106,793.08 for a total amount of $230,992.34. With regard to all Connecticut taxpayers, the commissioner has consistently taken the position that "[w]arehouse storage fees are not considered a rent expense under the definition of [§ 12-218]."

The trial court upheld the validity of the commissioner's assessment. Despite the definition of "gross rents" in § 12-218 (b) as "money . . . payable . . . by the taxpayer . . . for the use or possession of the property," the court ruled that fees paid for warehouse space do not qualify for inclusion within the property factor unless the taxpayer has rented property that is tangible. Characterizing the transactions between Foodways and the warehouses as bailments rather than as leases, the court concluded that the warehouse contracts did not involve the rental of tangible property. On that basis, the court held that Foodways' warehouse fees could not be included within the property factor of the apportionment statute. The court also rejected Foodways' alternate claim that the commissioner could not rely on his interpretation of the statute on a case-by-case basis but was required, instead, to implement his interpretation through the promulgation of a regulation.

Foodways has raised three issues on this appeal. It argues that the trial court: (1) used an incorrect standard of construction in its analysis of § 12-218; (2) misapplied § 12-218 in the circumstances of this case; and (3) improperly permitted the commissioner to rely on

an interpretation of § 12-218 for which the commissioner had not promulgated a regulation. Because we agree with Foodways' first two claims, the judgment of the trial court must be reversed. We therefore need not consider Foodways' third claim.

I

The basic contours of the state's exercise of its taxing power with respect to multistate corporations are not at issue. The underlying tax is the Connecticut corporation business tax; General Statutes c. 208; which is "in the nature of an excise tax levied against domestic and foreign corporations alike, for the privilege of doing business in a corporate capacity within this State." (Internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Tax Commissioner*, 178 Conn. 243, 247, 423 A.2d 883 (1979). "Section 12-214 (a), which imposes the corporation business tax, provides that the tax is 'to be measured by the entire net income . . . from business transacted within the state during the income year,'[4] while § 12-218 provides a measure to determine the taxable net income of multistate corporations to be apportioned to this state. *Altray Co.* v. *Groppo*, [224 Conn. 426, 432–33, 619 A.2d 443 (1993)]; *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services*, [202 Conn. 583, 589–91, 522 A.2d 771 (1987)]; *Schlumberger Technology Corporation* v. *Dubno*, [202 Conn. 412, 415–16, 521 A.2d 569 (1987)]." *Kelly-Springfield Tire Co.* v. *Bajorski*, 228 Conn. 137, 142, 635 A.2d 771 (1993). Within the constraints that the

[4] General Statutes § 12-214 provides in relevant part: "IMPOSITION OF TAX. (a) Every . . . company carrying on, or having the right to carry on, business in this state . . . shall pay, annually, a tax or excise upon its franchise for the privilege of carrying on or doing business, owning or leasing property within the state in a corporate capacity . . . such tax to be measured by the entire net income as herein defined received by such corporation or association from business transacted within the state during the income year . . . ."

commerce clause and the due process clause of the United States constitution impose on state tax powers, § 12-218 serves to quantify the presence of a multistate corporation in this state and elsewhere. See id., 143; *Altray Co.* v. *Groppo,* supra, 434.

In construing § 12-218, we have consistently held that apportionment of a multistate corporation's taxable income between other states and Connecticut involves the imposition of a tax rather than the availability of an exemption. Accordingly, any ambiguity in the application of § 12-218 must be resolved in favor of the taxpayer and against the commissioner. *Kelly-Springfield Tire Co.* v. *Bajorski,* supra, 228 Conn. 143; *Altray Co.* v. *Groppo,* supra, 224 Conn. 435.

The trial court questioned the validity of this principle of construction in light of the possibility that different multistate corporate taxpayers might find it in their interest to advocate different constructions of § 12-218 depending on the nature of their business in Connecticut and elsewhere. On the present record, however, such a consideration is purely speculative. Foodways has sought a construction of "gross rents" which, according to the stipulation between the parties, the commissioner has consistently rejected. There is, therefore, no discernible reason to fear that resolution of this ambiguity in § 12-218 in accordance with our well established principles creates a risk of inconsistent interpretations of the statute.

## II

The property factor is one of the three factors that, under § 12-218 (b), must be calculated for the purpose of allocating the income of a multistate corporation to this state. The property factor requires the taxpayer to compute the value of "tangible property" in Connecticut that is "held and owned by the taxpayer" or "rented to the taxpayer," and then to compare that

value to the value of *all* tangible property that is held and owned by, or rented to, the taxpayer. In conjunction with rentals to the taxpayer, § 12-218 (b) defines "gross rents" as "the actual sum of money or other consideration payable, directly or indirectly, by the taxpayer or for its benefit for the use or possession of the property, excluding royalties, but including interest, taxes, insurance, repairs or any other amount required to be paid by the terms of a lease or other arrangement."

The trial court agreed with Foodways that the warehouse space that is the subject of the warehouse contracts in this case could, in some circumstances, qualify as "tangible property" within the meaning of § 12-218 (b). The court nonetheless concluded that the warehouse fees paid by Foodways were not rental payments under § 12-218 (b) because, in the absence of control over a specific part of the warehouse premises, Foodways was merely a bailor and, in that capacity, had not rented any "tangible property."

The specific issue raised by this appeal, therefore, is whether § 12-218 (b) includes, as rental payments, fees that a taxpayer has agreed to pay to a warehouse that commits itself to make available a specific *amount* of space rather than a specific *location* for the space. As a matter of statutory construction, this issue requires us to reconcile the prefatory language of § 12-218 (b) that the property factor measures "the value of tangible property rented to the taxpayer" with the subsection's subsequent capacious definition of "gross rents" to include payments for "the use or possession of the property" pursuant to "the terms of a lease or other arrangement."

On its face, the statutory definition of "gross rents" includes Foodways' warehouse storage fees. Foodways is paying for the "use" of space, and such "use," under

the statute, need not arise out of a possessory interest. Foodways' contracts are "arrangements," and such "arrangements," under the statute, need not take the form of leases.

The force of this facial analysis of § 12-218 (b) is not diminished by the fact that the contracts between Foodways and its warehouses have some of the features of a bailment. Although Foodways' warehouse storage contracts resemble bailments because the contracts do not reserve specific space to Foodways, the contracts nonetheless have the essential characteristics of rental arrangements with respect to the fees that Foodways pays for storage, because these fees do not include handling costs associated with the storage of Foodways' products. For tax purposes, it is significant that, unlike ordinary contracts of bailment, Foodways' contracts "unbundle" storage fees from handling fees. There is no automatic carryover from the common law attributes of a bailment, which were largely designed to allocate risks of loss, to the implications of such a business relationship for the apportionment of a multistate corporation's income to this state. See *McKesson & Robbins, Inc.* v. *Walsh*, 132 Conn. 158, 162–63, 42 A.2d 841 (1945).[5] The storage contracts between Foodways and its warehouses fall literally within the definition of rental arrangements contained in § 12-218 (b).

The commissioner argues, nonetheless, that the express language of the statutory definition of "gross rents" must be limited in accordance with the statutory requirement that the taxpayer's payments qualify as "tangible property rented to the taxpayer." Undesignated space, the state maintains, cannot be "tangible property." The commissioner, however, cites no text, legislative history or policy that supports his interpre-

---

[5] *Zweeres* v. *Thibault*, 112 Vt. 264, 23 A.2d 529 (1942), on which the trial court relied to the contrary, neither reflected a contractual division of fees nor did it consider the tax consequences of a bailment.

tation. Indeed, contrary to the commissioner's argument, the text of § 12-218 suggests that the legislature may have used the term "tangible property" not to distinguish between definite space and undesignated space, but to distinguish tangible property from "intangible assets" such as stocks, bonds, bank accounts and the like. Such a distinction arguably is reflected in the fact that, in describing the receipts factor, § 12-218 lists "intangible assets" and "tangible property" separately. Moreover, while there may be a policy reason for excluding intangible assets from the property factor—that such assets often cannot be said to be located in a particular state; see J. Warren, "Income Taxes: Principles of Formulary Apportionment," Tax Management Multistate Tax Portfolio Series § 1150.05.B (1994)—that policy reason does not apply to warehouse space, which, even if undesignated, is located in a particular state. The best that can be said for the commissioner's argument is that the juxtaposition of the various phrases used by the legislature in describing the property factor creates an ambiguity about the meaning of the "use" of property by an "arrangement" that is not a lease. Such an ambiguity must, however, be resolved in favor of the taxpayer, Foodways. See part I of this opinion.

We note finally that a construction of § 12-218 (b) to include warehouse storage fees as rental payments is consistent with the view taken in other jurisdictions. The parties have cited no judicial decision that is directly on point and we have found none.[6] Regulations issued elsewhere, however, support the result that we have reached. We have recognized that § 12-218 to a

---

[6] The commissioner cites *Alconox, Inc.* v. *New York State Tax Commission*, 114 App. Div. 2d 575, 494 N.Y.S.2d 432 (1985), but that case arose under a regulation expressly excluding "amounts payable for storage, provided such amounts are payable for space not designated and not under the control of the taxpayer . . . ." 20 New York Corp. Income Regs. § 4-3.2 (c) (3), New York Tax Reports ¶9-749.

significant extent parallels the Uniform Division of Income for Tax Purposes Act (UDITPA); *Texaco, Inc. v. Groppo,* 215 Conn. 134, 141–42 n.6, 574 A.2d 1293 (1990); *Schlumberger Technology Corp. v. Dubno,* supra, 202 Conn. 417 n.5; and regulations published pursuant to UDITPA treat payments for the use of warehouse storage space as rental payments. Multistate Tax Commission Regs. IV.11.(b) [.30] (3) and example (ii), 2 CCH Multistate Corporate Income Tax Guide ¶8274. Taxing authorities in several jurisdictions that have adopted UDITPA[7] have specifically promulgated conforming regulations as well.[8]

The judgment is reversed and the case is remanded with direction to sustain the appeal.

In this opinion the other justices concurred.

---

[7] Except for Alabama, which has adopted UDITPA by adoption of the Multistate Tax Compact; Ala. Code § 40-27-1 (1993); the statutory provisions in these states, like our § 12-218 (b), define the property factor to include property that is rented to the taxpayer. Cal. Rev. and Tax. Code § 25129 (West 1993); Ill. Rev. Stat. c. 35, ¶304 (1) (1993); Idaho Code § 63-3027 (j) (1993).

[8] Ala. Regs. § 810-3-31.-02. (5) (a) (V) II B; California Code Regs. tit. 18, § 25130 (b) (3) (B); Ill. Regs. § 100.3350 (3) (B) (ii); Idaho Regs. § 27,4.11.b.iii. (b) Ex. 2.